David Richardson, OSB
david@pdxlawgroup.com
PDX LAW GROUP, PC
121 SW Morrison, Suite 1520
Portland, OR 97204
(ph) 503-546-0141
(fax) 503-536-6843
Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON, PORTLAND DIVISION

| | |
|---|---|
| ANGELA TORRES, an individual | Case no.: 3:17-cv-01270-AC |
| Plaintiff, | **DECLARATION OF ANGELA TORRES** |
| v. | In support of Plaintiff's motion for a TRO and order to show cause |
| ALIREZA ZAMANIZADEH, a/k/a ALI ZAMANI, an individual, and ADULT CARE SEARCH, a foreign non-profit corporation, | |
| Defendants. | |

I, Angela Torres, do state and declare:

1. I am the plaintiff in this action and make this declaration based on my personal knowledge. I am of legal age and competent to testify to the matters herein.

2. I first met Defendant Alireza Zamanizadeh ("Defendant Zamani") in May 2016.

3. Shortly thereafter, Defendant Zamani and I became romantically and physically involved.

4. I had been separated from my husband, Ravinder Shergill, for about 7 years when I first met Defendant Zamani, but hadn't filed for divorce.

Declaration of Angela Torres
Page 1
*Torres v. Zamanizadeh et al*, no. 3:17-cv-01270-AC

PDX Law Group, P.C.
121 SW Morrison, Suite 1520
Portland, OR 97204
PH 503.546.0141  FAX 503.536.6843

5. Defendant Zamani urged me to file for divorce, offering to provide emotional support, advice on how to proceed in my divorce, and physical protection.

6. Defendant Zamani represented that he could help me protect my assets from my husband in the divorce by temporarily transferring the assets to his charitable organization, Defendant Adult Care Search ("Defendant ACS"). *See* ex.12 p.5 ("You donated it… There is no law saying you can't but he has not … therefore you are entitle to half [of his]. This we're [sic] I helped you big"), p.8 ("I am taking a risk to help you"), p.9 ("Do you know what my risks are trying to help you"); ex.7 p.5 ("you signed your guys [sic] to My name for saving it out of divorce").

7. Throughout the course of our relationship and interactions, Defendant Zamani boasted of his legal and business intelligence and skills, often berating me if I acted without his clearance or in a way in which he did not agree. Because of his apparent success and knowledge, I felt I could trust him and follow his advice, which included full disclosure of all my own and marital assets and properties to Defendant Zamani so he could provide counsel on the divorce. I did fully disclose assets, properties, and status updates throughout the divorce case to Defendant Zamani, who provided advice on the case. Copies of demonstrative messages with Zamani are attached as **exhibit 12**.

8. I understood and expected, and Defendant Zamani confirmed, that any assets transferred to Defendant ACS would be returned to me once my divorce was finalized. If the transfers were intended as a donation, Defendant Zamani would not have emphasized the risk he undertook to guide and help me, *infra ¶6,* because he would not have been helping me temporarily shield assets.

Declaration of Angela Torres
Page 2
*Torres v. Zamanizadeh et al*, no. 3:17-cv-01270-AC

PDX Law Group, P.C.
121 SW Morrison, Suite 1520
Portland, OR 97204
PH 503.546.0141  FAX 503.536.6843

9. I would not have thought to shelter my assets from the divorce without Defendant Zamani's suggestion.

10. I would not have provided substantial funds or my family home to Defendant ACS without Defendant Zamani's assurances that anything given to Defendant ACS would be returned upon the finalization of my divorce.

11. All of these assets were properly reported and accounted for in my divorce proceedings. *See ex.12 p.11* for a sample message disclosing to Zamani that I began reporting the retirement assets to my attorney.

12. At no point did I intend to make a charitable donation to Defendant ACS or permanently transfer my assets to Defendant ACS or Defendant Zamani.

13. In June 2016, at Defendant Zamani's request and insistence, I transferred $290,000.00 from my retirement accounts to Defendant ACS in two separate transactions. The first was a $70,000 deposit on June 13, 2016. A copy of the deposit slip is attached as **exhibit 1**. The second was a wire transaction for $220,000 on or about June 22, 2016.

14. On June 14, 2016, at Defendant Zamani's request and insistence, I quit claimed my home, located at 779 W. Chestnut St., Washougal, WA 98671, to Defendant ACS. A copy of this deed is attached as **exhibit 2**.

15. Also on June 14, 2016, Defendant Zamani had me execute a "Power of Attorney to Sell Real Estate." A copy of this power of attorney is attached as **exhibit 3**. According to the records, the power of attorney was recorded prior to the quit claim deed.

16. In or about July 2016, at Defendant Zamani's request, I applied for a home equity line of credit in the amount of $60,000 to loan to Defendant Zamani for his business ventures. After my first application with Wells Fargo was denied because of my employment

Declaration of Angela Torres
Page 3
*Torres v. Zamanizadeh et al*, no. 3:17-cv-01270-AC

PDX Law Group, P.C.
121 SW Morrison, Suite 1520
Portland, OR 97204
PH 503.546.0141  FAX 503.536.6843

situation, I applied for a credit line with IQ Credit Union. This application was denied because my home was no longer in my name.

17. Shortly after that denial, I contacted Defendant Zamani about returning my home to my name instead of Defendant ACS so I could obtain the loan; Defendant Zamani waived off my question. This text message exchange is attached as **exhibit 4**. This message also shows my ongoing expectation that the property would be transferred back into me from Defendant ACS.

18. On or about September 26, 2016, as requested by Defendant Zamani, I obtained a $13,000 cashier's check payable to Vahid and Jane Tajadod for Defendant Zamani's benefit. Copies of Defendant Zamani's representations to me by message and a copy of the check are attached as **exhibits 5**.

19. Defendant Zamani represented to me that he has foreign bank accounts, in at least Canada. A copy of Defendant Zamani's message to me on this topic is attached as **exhibit 6**.

20. Defendant Zamani represented to me that he has millions of dollars' worth of properties, business interests, contracts, companies, connections, and other assets abroad. Copies of Defendant Zamani's such representations to me in messages are attached as **exhibit 7**.

21. On multiple occasions I approached Defendant Zamani about the funds I had given to him for holding or executing a quit claim deed to return my house to my name. He would either ignore the question all together or would agree to a time and place to meet to execute the quit claim deed and then fail to show. Copies of Defendant Zamani's such representations to me in messages are attached as **exhibit 8**.

Declaration of Angela Torres
Page 4
*Torres v. Zamanizadeh et al*, no. 3:17-cv-01270-AC

22. In February 2017, after several fights and a general breakdown of our trust and relationship, I once again confronted Defendant Zamani about executing a quit claim deed to return my home to my name before he left for Iran. He informed me that I would be receiving a donation receipt from Defendant ACS and that Defendant ACS could and would do whatever it wanted with the property. This text message exchange is attached as **exhibit 9**.

23. I was awarded a Bend, Oregon residential property in my divorce. In November 2016, continuing his counsel through my divorce, Defendant Zamani requested the address of this property's deed so his FBI friend could ensure it was transferred with clear title. A copy of this request is attached as **exhibit 10**. On February 15, 2017, just before this suit was filed, Defendant Zamani and Defendant ACS used a power of attorney to quitclaim my Bend, Oregon property to Defendant ACS and then mortgaged the property for the benefit of Defendant ACS. Copies of this deed and subsequent mortgage are attached as **exhibit 11**. I did not know about this transfer until it was discovered through an Oregon Department of Justice investigation of Defendant ACS and Defendant Zamani.

24. Despite our original agreement and Defendant Zamani's continued reassurances, I have not received any money or property back from Defendant Zamani or Defendant ACS.

I HEARBY DECLARE THAT THE ABOVE STATEMENT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE FOR USE AS EVIDENCE IN THE COURT AND IS SUBJECT TO PENALTY OF PERJURY.

DATED: January 5th, 2018

/s/ Angela Torres
Plaintiff Angela Torres

Declaration of Angela Torres
Page 5
*Torres v. Zamanizadeh et al*, no. 3:17-cv-01270-AC

PDX Law Group, P.C.
121 SW Morrison, Suite 1520
Portland, OR 97204
PH 503.546.0141  FAX 503.536.6843

CHASE

CHASE 

Deposit cash or checks at a
Chase DepositFriendly(SM) ATM.
An image of your check can
be printed on your receipt.

My Transaction Summary

****************************************

Transaction #446
Account Number Ending In:             6923
Checking Deposit            $70,000.00

Further review may result in delayed
availability of this deposit
...........................................
JPMorgan Chase Bank, N.A.
Northeast 112th and Halsey, Branch 74023
B
1-800-935-9935
Member FDIC, Equal Housing Lender
Please keep your receipt
06/13/2016 17:17

Business Date 06/13/2016
Session #185

Thank you - Maridee
Cashbox #01

**5293452 D**
RecFee - $73.00  Pages: 1 - ANGELA SHERGILL
Clark County, WA        06/15/2016 09:52

Real Estate Excise Tax
Ch. 11 Rev. Laws 1951
EXEMPT
Affd. # 747481 Date 6/15/16
For Details of tax paid see
Affd. #
Doug Lasher
Clark County Treasurer
By
Deputy

## **Quit Claim Deed**

Recording Requested by and
when recorded, Return to:

**Adult Care Search Inc.**
613 SW Elderbrook Pl
Portland OR 97225
Attn: Ali Zamani

NOW THEREFORE, for good and valuable consideration, the receipt and adequacy of
which are acknowledged, Angela Shergill " **Transferor**" does remise, release, and forever quit
claim to Adult Care Search, Inc. " **Transferee**" all right, title, and interest transferor has in the
real property located in the city of Washougal, County of Clark   and State of Washington
to- wit :

Parcel Number: 129996036    Book 311 Pg 393
**LOT 18, CODA RIDGE ESTATES**    Clark County WA
**779 W CHESTNUT STREET, WASHOUGAL, WA 98671**

Executed on this day of June 14, 2016.

Transferor:
Angela Shergill (Owner of the record)

STATE OF WASHINGTON

County of Clark

This instrument was acknowledged and signed before me on June 14th, 2016
by Angela Shergill who appeared personally.

Notary Public for Washington
Seal of Notary    My Commission Expires: Sep 30, 2017

Notary Public
State of Washington
KIMBERLY TIPPETT
My Appointment Expires Sep 30, 2017

EL

## POWER OF ATTORNEY
## TO SELL REAL ESTATE

*Angela Shergill*
779 W. Chestnut St.
Washougal WA 98671

To

Ali Zamani
6132 SW Elderbrook place
Portland Or. 97225

After recording, return to (Name, Address, Zip):

Ali Zamani
6315 SW Elderbrook place
Portland or. 97225

SPACE RESERVED
FOR
RECORDER'S USE

STATE OF OREGON,
County of _____ } ss.

I certify that the within instrument was received for recording on _____, at _____ o'clock _____M., and recorded in book/reel/volume No. _____ on page _____ and/or as fee/file/instrument/microfilm/reception No. _____, Records of this County.

Witness my hand and seal of County affixed.

_____
NAME                    TITLE

By _____, Deputy.

KNOW ALL BY THESE PRESENTS that I, *Angela Shergill* _____, have made, constituted and appointed, and by these presents do hereby make, constitute and appoint ___ *Ali Zamani* _____ as my true and lawful attorney for me and in my name, place and stead, and for my use and benefit to sell and convey to any party or parties at such price or prices and upon such terms as shall seem equitable, all or any portion of the following described real property situated, lying and being in the county of __ *Clark* _____ in the state of __ *Washington* _____ and more particularly described, as follows, to-wit:

with all the privileges and appurtenances thereunto belonging or in any way appertaining, and for me and in my name to make out, execute, acknowledge and deliver proper deeds of conveyance of the same with or without covenants of seisin, freedom from encumbrances and warranty.

GIVING AND GRANTING unto my attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my attorney shall lawfully do or cause to be done by virtue of these presents.

In construing this instrument and where the context so requires, the singular includes the plural.

DATED _____ 6/14/2016. _____

_____

STATE OF ~~OREGON~~ *Washington*, County of __ *Clark* _____ ) ss.
This instrument was acknowledged before me on __ *June 14th 2016* _____, by *Angela Shergill*

Notary Public
State of Washington.
KIMBERLY TIPPETT
My Appointment Expires Sep 30, 2017

_____
Notary Public for ~~Oregon~~ *Washington*
My commission expires __ *Sept 30 2017* _____

PUBLISHER'S NOTE: Use of this form in connection with real estate may subject the user to real estate licensing requirements. To avoid the need to comply with those requirements: 1) record this form in the county or counties where the real estate is located; 2) specify the address(es) of the property to be managed, controlled, and/or sold; and 3) state that the agent, in dealing with the real property, may not receive any compensation that would require the agent to be licensed under ORS 696 or other applicable law.

Torres Decl. ex.3

**5293402 POA**
RecFee - $124.00   Pages: 2 - ANGELA SHERGILL
Clark County, WA                    06/15/2016 09:20

**RETURN ADDRESS**

779 W. Chestnut St.

Washougal WA
98673

Please print neatly or type information
**Document Title(s)**

Power of Attorney

**Reference Numbers(s) of related documents:**

_____

Additional Reference #'s on page _____

**Grantor(s)** (Last, First and Middle Initial)

Shergill    Angela

Additional grantors on page _____

**Grantee(s)** (Last, First and Middle Initial)

Zamani, Ali

Additional grantees on page _____

**Legal Description** (abbreviated form: i.e. lot, block plat or section, township, range, quarter/quarter)

_____

Additional legal is on page _____

**Assessor's Property Tax Parcel/Account Number**

_____

Additional parcel #'s on page _____

The Auditor/Recorder will rely on the information provided on this form. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.

**I am requesting an emergency nonstandard recording for an additional fee as provided in RCW 36.18.010. I understand that the recording processing requirements may cover up or otherwise obscure some part of the text of the original document.**

**Signature of Requesting Party**

‹  **Ali**  ⓘ

Kiss you good night in bed

Wed, Aug 17, 11:36 AM

Hope you are doing well, in between cases here. IQ credit union called and left a message, they can't put a lien against my home since the Title is with Adult Care. Should I change it back to my name do I can be considered for the Line of Credit? Sorry to bother you with this but I need to know what to say to them before I call them back as they requested to discuss this.

No I knew that. Just don't worry. I am in the court and will contact you when done

Ok

Don't understand I am in court please I got I will contact when done



iMessage



**Where are my new legs pic kiss you and miss you and miss home** *11:28 AM*

**Save the pics for in person! They are yours!** *12:08 PM* ✓✓

**Yes it's ok now** *12:13 PM*

**Hi love I just thought about this much more regarding the check. Don't need to write anything on the bottom of the check. If you don't write anything is much better. You can say what ever when it's not written what it's for. So disregard what I said to write and go a** *6:02 PM*

**Haas and des posit but Che k with his bank make sure it's covered and if not get the back to give you a statement. Regarding it. Kiss you** *6:04 PM*

**Ok. I'm at work for the night here so don't forget to text me instructions of what I need to do for you and whom to meet. Hugs and kiss from far away lov-** *7:29 P.*



●●●○○ T-Mobile  LTE          12:48 PM          ⏺ ❊ 43% ▬

‹ Chats                  **Ali**                          A
           last seen yesterday at 12:18 PM

                    September 26

Good day... My work schedule this week... Tuesday 7a - 4 pm , Wednesday 10 am - premediation meeting with Brian to outline everything to be discussed, Thursday 7 a-5 pm, Friday leave for Salinas to work 48 hour shift, fly back on Monday....
Important for you to know do you can organize the time to meet for money exchange. Hugs and kisses from far away my love                    7:24 AM ✓✓

Yes Hun. I need you to get a cashier check for total of $13000.  To the name of Vahid tajadod.  First thing in the morning.  Then once got it call me I will let you know who to contact and where in Vancouver          7:28 AM

Ok, bank opens at 9 am. Will go after drop kids to school          7:43 AM ✓✓

Ok Hun make sure you put the issuer from you and Ali Zamani to:
Vahid tajadod and 82nd auto mall

✎  Message                              🎤



●●●○○ T-Mobile LTE    12:48 PM    ⊙ ✳ 43% ▬

‹ Chats    **Ali**    Ⓐ
last seen yesterday at 12:18 PM

Vahid tajadod and 82nd auto mall

You make sure to keep the copy for you and I. Once you got it call me or text me please    *7:47 AM*

Heading to bank now... Will wait for them to open at 9 am
Please be more specific so there aren't any mistakes.
To: ?
From?
Is Vahid's address needed at all ?    *8:34 AM* ✓✓

On the other hand love don't out my name on as the issuer only yours would be sufficient.    *8:52 AM*

Ok
Issuer: me
To: Vahid? Do I need address for Vahid?    *8:56 AM* ✓✓

Yes you is will be the only issuer and payee will ; Vahid tajadod and 82nd auto mall.
Please call Joan his wife at

✎ Message    🎤



●●●○○ T-Mobile  LTE          12:48 PM          ⊙ * 43% ▇

‹ Chats                      **Ali**
                  last seen yesterday at 12:18 PM          A

Please call Joan his wife at
3602817945 and tell her you have
cashier check. And where to meet they
leave in Vancouver.  I like you deliver it
or meet her around 6 pm or after that
and if she asked to meet before just tell
her you have things to do and will try
but for sure after work you can deliver
it.  Make sure you keep the copy for
you and I only give her the top cahows
check and not the original copy the
pink copy stays with you          9:08 AM

Call me when you got the check  9:08 AM

                                          Ok  9:08 AM ✓✓

                        Shall I get the address of 82nd Auto
                        Mall from Google?          9:10 AM ✓✓

                        Done. Will bring to Joan's house tonite
                        at 7 pm                    9:36 AM ✓✓

Ok call me in an hour  9:44 AM

Hun please see if you can make one
simple change in the cashier check
that is                                          ⌄

🖇  Message                                      🎤

Torres Decl. ex.5
Page 4 of 7





●●●○○ T-Mobile  LTE          12:48 PM          ⊙ ⁂ 43% ▬

‹ Chats                    **Ali**
                last seen yesterday at 12:18 PM              A

rid of 82nd auto mall. She needs to be able to cash if needed she says. I am working tomorrow and will try to get out early to get to bank again and go back to her house in evening.    *8:11 PM* ✓✓

        September 27

Don't forget to keep the pink copy for our record                    *9:31 AM*

Heading to bank now, then will deliver to Joan at her work....had to take off work today. On crutches, torn ligament in knee, can't walk. Will head to emergency room after for MRI.  Are you doing ok?          *9:40 AM* ✓✓

The copy is white not pink... That's fine yes?                    *9:41 AM* ✓✓

Wow what happened love you made me worried.  That is ok white copy. Make sure you deliver after 6 pm love                    *9:43 AM*

Why after 6 pm? It's better now for me to drop to her now before I go to ER. May need surgery if completely torn

🖇  Message                              🎤



●●●○○ T-Mobile  LTE                12:49 PM              ⏱ ✳ 43% ▮

‹ Chats                      **Ali**                              A
                    last seen yesterday at 12:18 PM

May need surgery if completely torn.
So much pain                          *9:46 AM* ✓✓

Ok that is fine  *9:46 AM*

Thank you Ali. I'll send a picture of
check to your email again  *9:47 AM* ✓✓

Thank you  *9:47 AM*

Delivered hon, hopefully all is correct
now and all good to go. Heading to ER
now, I'll let you know outcome later.
Hugs and kiss from far away  *10:31 AM* ✓✓

Thank you love let me know about you
ASAP when you find out kiss you
                                          *10:35 AM*

Will do.  *11:13 AM* ✓✓

                    September 29

Miss you Hun how are you doing love.
How are the kids
                                          *9:07 AM*

Hon. Some how I can't find the
measurements you sent to me. Did you
email it or did you send via telegram.
Regardless can you resend it for me

📎  Message                              🎤

●●○○ T-Mobile LTE   1:22 PM   ☐ 89% ▮

< **Ali** ⓘ

Monday 9:27 PM

> So all clear to leave tomorrow then yes?

What

I don't understand what are you saying making a comment in

> Just talking about the document that came

It's for what I have to do and take with myself

> Ok

I cleared with my Canadian bank bank of noves scotia that they would take a cashier check and I can take it to Amsterdam in their branch for funding. For what you asked today rather than my USA bank

> I don't have access to the funds. I texted Brian to see if he could

iMessage

Sent from my iPhone

> On Sep 15, 2016, at 6:57 AM, Ali Zamani <ali0719@icloud.com> wrote:
>
> This is one of my property that I am selling its an orchard 10 hectares right about in 2 miles of the capital.  It's marketed for $10mil. I will be going to my villa in the northern next week and will send you te picture that is about 4 hechters and listed for $4.5 mil. And
> Meanwhile my meeting with piouktry Union which just finalized for 60000 metric tons at $450!metric ton. It all good how are you doing love
>
> <IMG_2744.JPG>
>
>
> Sent from Ali's iPhone

From: **Raj Shergill** ›                          

To: Ali Zamani ›                    Hide

---

## Re:

September 16, 2016 at 11:55 AM

⟋ Found in Outlook Sent Mailbox

---

Must describe what these places are.... So sunny and beautiful!

Sent from my iPhone

> On Sep 16, 2016, at 10:52 AM, Ali Zamani <ali0719@icloud.com> wrote:
>
>
>
> <IMG_2754.JPG>
>
>
>
> Sent from Ali's iPhone

 

❮ Search                    ❮    ❯

On Sep 17, 2016, at 7:00 PM, "ashergil@hotmail.com" <ashergil@hotmail.com> wrote:

Incredible– I've never seen something so beautiful. Why are you letting it go?

Sent from my iPhone

> On Sep 17, 2016, at 12:11 AM, Ali Zamani <ali0719@icloud.com> wrote:
>
> A king has to ha e a castle right ?
>
> Sent from Ali's iPhone
>
>> On Sep 16, 2016, at 11:48 PM, Raj Shergill <ashergil@hotmail.com> wrote:
>>
>> So very gorgeous! Looks like a castle!! Is it a museum or a home or what?
>>
>> Sent from my iPhone



From: **Ali Zamani** ›

To: **Raj Shergill** ›                Hide

## No Subject
September 18, 2016 at 10:29 AM
Found in Outlook Inbox

This is my villa in the cassoian sea north of Iran







## Ali

I am mad. You have plaid me but I let you to see how far you would. Honey I am worldwide company and esl with government and politics behind that you can't grasp. I don't like people to play me when they do I walk. You are smart. You know when you signed your guys to

My name for saving it out of divorce, you can never go and ask for quite like since it's not in your name but you played me and I really needed that help for my business but you instead of caring played me. I never was going to tell you this but because I saw that total disregard about what you said I had to tell you. I don't keep things in me and won't waste time thinking about it. But since I care for you and kids and like you wanted to give you the benefit of doubt. You should be smarter than this to disregard me. You will have nothing with me a so simply walk. My

  

iMessage


Torres Decl. ex.7
Page 5 of 5


When you care for someone, you make time for them. I always did and I always will. That is who I am.

We have a few business matters to discuss regarding putting my house back in my name, I don't care if I lose it at this point. I don't care about anything anymore. I also will need my retirement money to put away for kids college expenses.

I am really really sad and crying on the streets of Vegas right now but I'm grateful for this experience. It has taught me that being alone is better than being hurt by someone you care about.

Sun, Aug 21, 10:34 PM

I am very pissed off and you don't have the right to stop or come without a call totally disrespectful and selfish. I don't

   



●●●○○ T-Mobile LTE    1:16 PM    ⊙ ⁎ 31% ▬

< **Ali** ⓘ

Here are copies... I am awaiting details/receipt of transactions from Fidelity into your account ending in 6923 <u>on 6/17</u> in the amount of $228,583.00. Please take care of this soon. I need to pay my house off in full and rest will go to Natalie's account for college. Quit Claim Deed can be done by you to transfer my house back in my name. I need to take care of things with the acquisition of this Bend home now and its subsequent bills. I have a mother an children to take care of. No need to explain anything or to see you ever again, just return the money that belongs to me and my children.

   iMessage 

< **Ali** 

belongs to me and my children. Let me know when it is done.

Child support ends for Natalie in <u>April 30th</u>, her 18th birthday as well as college funding. Same for rest of kids.

I am on my business trip and won't be back till Thursday late. When you are back and I am back from my business trip we will meet and what ever needs to be done will be taken care of. I don't need neither to hear nor be a part of your family matters no more. That would be either Friday or Monday.

We do not need to meet for this to be taken care of. Let me know when it is all done

Tue, Jan 3, 9:04 AM

Gd m Ali. Are you available to meet at bank today or tomorrow to get things done? I need to

   iMessage 

 

‹ **Ali**   ⓘ

Mon, Jan 23, 11:36 AM

Gd m Ali,
Things have changed drastically. I have taken a full time position in Cali.
Can you please meet me at courthouse tomorrow or Wednesday and Quit Claim my home back to me so that I can move forward with my kids?

I can meet with you tomorrow early eve or wed

Whatever is better for you. Just let me know

Will do

Mon, Jan 23, 7:44 PM

Are you working tomorrow. I have doctor spot in afternoon for my trip and dentist st 4 for extraction of wisdom.

I'm off tomorrow. Can meet at

     iMessage   

‹    **Ali**    ⓘ

> I'm off tomorrow. Can meet at courthouse in morning

Cant do in the morning  have meeting in Salem at 8 for care facility licensing   I also have a paper signing in escrow on wed at 3.  Let me know your schedule during next two day

> Wednesday morning? Working Thursday, Friday and Saturday

**Wed, Jan 25,** 9:38 AM

> Gd m Ali,
> Hope your mouth is not feeling too bad this am. I'm leaving on 2/3-2/11 to orient at new job in Cali and start looking at homes. You have a paper signing for escrow at 3 today. Can we meet anytime before then at the courthouse to get this Quit Claim done please?

I am in Salem and should be back before that I will call you

      iMessage    

Torres Decl. ex.8
Page 5 of 11

T-Mobile LTE    1:17 PM    80%




‹    **Ali**    ⓘ

I am in Salem and should be back before that I will call you when on my way back to Portland. And where to meet you

It was angry tooth in pain

> Oh I know. Nat and Emmy had all 4 removed at once not too long ago.

Wed, Jan 25, 5:20 PM

We have 30 more minutes before the escrow will be complete and can call you where I can meet up with you

> I will be taking Emmy to soccer practice from 6:30-9 pm. Can u bring paperwork for Quit Claim and cashiers check for 13K to my work tomorrow or Friday? I will be there both days.

Thu, Jan 26, 1:15 PM





iMessage



Torres Decl. ex.8
Page 6 of 11

‹   **Ali**   ⓘ

about it all morning. What are you going to do now about your travel? I read that diplomats are pardoned, so maybe you can go without problems? Personally, I think it's too risky to go since this ass is doing this. Unbelievable. Might get stuck there or might not be allowed to return. Could be a huge mess for you. Someone needs to dispose of him

Sat, Jan 28, 6:55 PM

Before I forget, let's take care of the Quit Claim Deed on Monday since it's my only day off during the week then leave Friday.

With the now infamous trump decision....worst case scenario...if you get stuck in Iran for an indefinite amount of time, all of my stuff will be tied up too. That's not good.

I have couple of trips to Cali

Torres Decl. ex.8
Page 7 of 11

‹ **Ali** ⓘ

I have couple of trips to Cali scheduled through May to work and check out homes and schools. Will touch base tomorrow on this. We need to move fast on this since you are scheduled to leave Thursday.

I will talk with you tomorrow afternoon may be we can meet around 4 or 5 or later

Okie doke

Dokie dokie wanna pockie lol

Sun, Jan 29, 1:35 PM

Took Burnside home per your recommendation! The real test will be Tuesday at rush hour! Lol! No traffic this am!

Sun, Jan 29, 7:54 PM

Hope all is well today. Can you please meet me at courthouse tomorrow between 11 am-1 pm

   iMessage 

Torres Decl. ex.8
Page 8 of 11



**Ali** 

Hope all is well today. Can you please meet me at courthouse tomorrow between <u>11 am-1 pm</u> for Quit Claim and bring Cashiers check for 13K? Will give you my account number to take care of the rest. This has to be done before you leave please. Let me know tonite or in am ok?

Angela no more text like this. You can call but I can't allow any more text like this to my phone. I will call you in an hour.

Ok sorry

**Mon, Jan 30,** 12:40 PM

Ali, r u free to talk right now? Can I call?

I will call you <u>around 2 pm</u> busy on long distance. Or We can meet in down town about 3 when I am free from work and calls.

      iMessage    




**‹**          **Ali**          **ⓘ**

fee to sell it back??? No guarantee they will sell it back. You said it yourself yesterday that you don't trust them. Why should I??

Why can't you " unfreeze" my retirement that you already have?? What happens to that money? Nothing is making sense to me.

Why am I involved in this in all honesty?? Sell it back at what price?? I have a $242K loan left on this home. Don't screw me. I want everything in writing. I know you need money but I need a home to live in with my kids and mom.all of this is making me very nervous Ali.

You are not have a good day

I thought I explained everything to you yesterday.   No more.

Now I know you are playing your




iMessage




<Search                    ‹  ›

From: **Raj Shergill** ›                    
To: Ali Zamani ›                   Hide

---

## Re: Something to make you smile today
September 20, 2016 at 12:24 PM
⟋ Found in Outlook Sent Mailbox

---

I will take care of this, put another call into Brian and emailed him. Things coming along for you?
I need some exterior repairs on my home, little dry rot under the siding; may need to withdraw some of my retirement money but will do when you get back.
I'm pushing through with those dance lessons! Only got you! Totally out of my element!! Omg!
Hugs and kisses to you as always!
Love
Angela

Sent from my iPhone

On Sep 20, 2016 at 9:52 AM Ali Zamani

   

  

‹                        **Ali**                        ⓘ

Now I know you are playing your sneaky game to gain.   I told you don't do that with me.   You will receive your donation receipt which has been mailed to you. We have nothing to talk about.  I helped you and that is the end of my helping you for your divorce etc.

I'm having major trust issues with you thanks to past events and Sabrina's messages to me. I want to trust but I'm struggling with it. I will help you if I have everything in writing about the plans and notarized.

*Delivered*

That is fine i let you know when I have time

You donate the property to our nonprofit and after that the nonprofit can do what ever deemed suited and can and will do for the nonprofit organization cause.   I was helping you to

     iMessage                

Torres Decl. ex.9
Page 1 of 1

---------- Forwarded message ----------
From: **Ali Zamani** <ali0719@icloud.com>
Date: Monday, November 21, 2016
Subject:
To: angela torres <atorme67@gmail.com>


Good congrats. You are talking about divorce right?  Send me the address of the bend property that you accepted. I just want someone to check something for you to make sure he did it create any liability or lean against it and that you were totally informed so you don't get short.  Getting a property with lean on it and not knowing.  I will email it to a friend if my who is in FBI and he has access to all national records to make sure for you.  I had talked with him before I left to keep an eye for you.


Sent from Ali's iPhone

On Nov 21, 2016, at 11:10 AM, angela torres <atorme67@gmail.com> wrote:

Hi hon,
How are you? Things are fine here. Been busy at new job. Signing off on paperwork today finally. It's all over. New name is " Torres" lol. 1/2 Spanish I am, 1/4 French, 1/4 Italian. What a combo! 6 more days for you... can't wait to feel your strong arms around me... much love!


On Sunday, November 20, 2016, angela torres <atorme67@gmail.com> wrote:
Hi hon,
Thinking of you this morning. How are you? Hugs and kiss

On Thursday, November 17, 2016, angela torres <atorme67@gmail.com> wrote:
Hello love,
It's been incredibly surreal that's for sure! I can't believe it ....finally! I am counting the days until I can hold you and kiss that beautiful face again! Distance sure makes the heart grow fonder! ( although I don't prefer that distance at all! )Will you get to see Anita for a little bit on your way home? I hope so...her hug will make you feel happy too. Much love

FORM No. 721 – QUITCLAIM DEED.

BLK                NO PART OF ANY STEVENS-NESS FORM MA

**DESCHUTES COUNTY OFFICIAL RECORDS**
**NANCY BLANKENSHIP, COUNTY CLERK**    **2017-06721**

$53.00

0110252920170000721001001

02/17/2017 03:55:50 PM

D-D Cnt=1 Stn=2 TM
$5.00 $11.00 $21.00 $10.00 $6.00

Angela Torres
779 W chestnut st.
wAshougal WA 98671
*Grantor's Name and Address*
Adult CARe search, INC
613 S.W Elderbrook PL
portland, OR 97225
*Grantee's Name and Address*

After recording, return to (Name and Address):
Adult CARe Search, INC
613 S.W Elderbrook PL
portland, OREgon 97225

Until requested otherwise, send all tax statements to (Name and Address):
Adult CARe Search, INC
613 S.W Elderbrook PL
portland, OR 97225

SPACE RESERVED
FOR
RECORDER'S USE

**QUITCLAIM DEED**

KNOW ALL BY THESE PRESENTS that Angela Torres

hereinafter called grantor, for the consideration hereinafter stated, does hereby remise, release and forever quitclaim unto
Adult CARe search, INC
hereinafter called grantee, and unto grantee's heirs, successors and assigns, all of the grantor's right, title and interest in that certain
real property, with the tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining, situated in
135 NE Totima Ln, Bend County, State of Oregon, described as follows *(legal description of property):*

LOT Sixteen of Bear Creek Estates P.U.D, being a portion of
PARcel A of Bear creek Village Condominiums Stg 1, city
of Bend, Deschutes County, OREgon

(IF SPACE INSUFFICIENT, CONTINUE DESCRIPTION ON REVERSE)

To Have and to Hold the same unto grantee and grantee's heirs, successors and assigns forever.
The true and actual consideration paid for this transfer, stated in terms of dollars, is $ 1.00 . ⑪ However, the
actual consideration consists of or includes other property or value given or promised which is ☐ part of the ☐ the whole (indicate
which) consideration.⑪ (The sentence between the symbols ⑪, if not applicable, should be deleted. See ORS 93.030.)
In construing this instrument, where the context so requires, the singular includes the plural, and all grammatical changes
shall be made so that this instrument shall apply equally to businesses, other entities and to individuals.
IN WITNESS WHEREOF, grantor has executed this instrument on Feb, 15, 2017 ; any
signature on behalf of a business or other entity is made with the authority of that entity.
BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD
INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND
SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON
LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. THIS INSTRUMENT DOES NOT ALLOW
USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS
AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE
TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO
VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS
DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO DETER-
MINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, AND
TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300,
195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2
TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

Attorney in fact

STATE OF OREGON, County of Multnomah ) ss.
This instrument was acknowledged before me on
by Ali Zamani Zadeh, Attorney In fact for Agela Torrs
This instrument was acknowledged before me on Feb 17, 2017
by Alizamanizadeh with power Atteray
as Attorney in fact
of Angela Torres

OFFICIAL STAMP
DAVID OLIN JORDAN
NOTARY PUBLIC-OREGON
COMMISSION NO. 935039
MY COMMISSION EXPIRES JANUARY 04, 2019

Notary Public for Oregon
My commission expires

PUBLISHER'S NOTE: If using this form to convey real property subject to ORS 92.027, include the required reference.

Torres Decl. ex.11
Page 1 of 20

166795Am

AFTER RECORDING RETURN TO:

Deschutes County Official Records **2017-015921**
M-DT
Stn=0 BN                    **04/27/2017 09:49:00 AM**
$11.00 $10.00 $95.00 $6.00 $10.00          **$153.00**
$21.00
I, Nancy Blankenship, County Clerk for Deschutes County, Oregon,
certify that the instrument identified herein was recorded in the Clerk
records.
Nancy Blankenship - County Clerk

Veristone Mortgage, LLC | NMLS ID: 1106440
6725 116th Ave NE, Suite 210
Kirkland, WA 98033
Brady Regier_ | NMLS ID: 1236903
Loan: 2017.0384

## TRUST DEED, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

THIS TRUST DEED, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "Trust Deed"), dated as of April 20, 2017, is entered into by and among Adult Care Search, Inc. ("Grantor"), whose address is 720 SW WASHINGTON Ste 700, Portland, OR 97205; Matthew M. Chakoian, Attorney at Law – Oregon State Bar #01227 ("Trustee"), whose address is 3710 168th St NE B201, Arlington, WA 98223; for the benefit of Veristone Mortgage, LLC, a Washington limited liability company ("Beneficiary"), whose address is 6725 116th Ave NE, Suite 210, Kirkland, WA 98033.

WHEREAS, Beneficiary has loaned to Grantor the sum of THREE HUNDRED SIXTEEN THOUSAND NINETY TWO DOLLARS AND 33/100 (U.S. $316,092.33) which is repayable, with interest, in accordance the terms of that certain Promissory Note dated April 20, 2017 (the Promissory Note, as it may be modified, extended, or replaced from time to time, is referred to herein as the "Note"). If not sooner paid, the Note is due and payable in full on October 31st, 2017.

NOW, THEREFORE, for good and valuable consideration, receipt of which is acknowledged, and for the purpose of securing the Obligations described in Section 1.01 below, Grantor irrevocably grants, bargains, sells, conveys, warrants, assigns, transfers, pledges, hypothecates and grants a security interest in, and confirms to Trustee in trust for the benefit and security of the Beneficiary, subject to and upon the terms and conditions contained in this Trust Deed, all of Grantor's right, title and interest in and to the real property located in Deschutes County, state of Oregon, and more particularly described in Exhibit <u>A</u> attached to this Trust Deed (the "Property").

TOGETHER WITH all interests, estates and rights that Grantor now has or may acquire at any time in the future in (a) the Property, (b) any and all options, agreements and contracts for the purchase or sale of all or any part of the Property or any interest in the Property; (c) all easements, rights-of-way and rights used in connection with or as a means of access to the Property, and (d) all tenements, hereditaments and appurtenances in any manner belonging, relating or appertaining to the Property;

TOGETHER WITH all interests, estates and rights of Grantor, now owned or acquired at any time in the future, in and to any land lying within any streets, sidewalks, alleys, strips and gores adjacent to or used in connection with the Property;

TOGETHER WITH all rights, titles and interests of Grantor, now owned or acquired at any time in the future, in and to any and all buildings and other improvements of every nature now or at any time in the future located on the Property and all fixtures of every kind and nature (including, all machinery, equipment and goods constituting fixtures) located on the Property or attached to, contained in or used in any such buildings and other improvements, and all appurtenances and additions to and substitutions and replacements of such buildings and improvements (collectively, the "Improvements");


Return to:
AmeriTitle

TOGETHER WITH all present and future rights to the use of any trade name by which all or any portion of the Property and the Improvements are known; any books and records relating to the use and operation of all or any portion of the Property and Improvements; all right, title and interest of Grantor in, to and under all present and future plans, specifications and contracts relating to the design, construction, management or inspection of any Improvements; and all rights, titles and interests of Grantor in and to all present and future licenses, permits, approvals and agreements with or from any municipal corporation, county, state or other governmental or quasi-governmental entity or agency relating to the development, improvement, division or use of all or any portion of the Property to the extent such trade names, licenses, permits, approvals and agreements are assignable by law; and all other general intangibles relating to the Property, the Improvements or their use or operation;

TOGETHER WITH all rights of Grantor in and to any escrow or withhold agreements, title insurance, surety bonds, warranties, management contracts, leasing or sales agreements, and service contracts which are in any way relevant to the ownership, development, improvement, management, sale or use of all or any portion of the Property or any of the Improvements;

TOGETHER WITH Grantor's rights under any payment, performance, or other bond in connection with construction of any Improvements, and all construction materials, supplies, and equipment delivered to the Property or intended to be used in connection with the construction of improvements on the Property;

TOGETHER WITH all leasehold estates and the right, title and interest of Grantor in and to all leases and subleases covering all or any portion of the Property or Improvements, whether now existing or arising at any time in the future, and all deposits paid to Grantor in connection with such leasehold estates, leases and subleases;

TOGETHER WITH all rights, interests and claims that Grantor now has or may acquire at any time in the future with respect to any damage to or taking of all or any part of the Property or the Improvements, including any and all proceeds of insurance in effect with respect to the Improvements, any and all awards made for taking by eminent domain, or by any proceeding or purchase in lieu of such a taking, of the whole or any part of the Property or the Improvements, and any and all awards resulting from any other damage to the Property or the Improvements, all of which are assigned to the Trustee for the benefit of the Beneficiary, and, subject to the terms of this Trust Deed, the Trustee is authorized to collect and receive the proceeds of and to give proper receipts and acquittances for, and to apply those proceeds to the Obligations except as otherwise provided in this Trust Deed;

TOGETHER WITH any and all mineral, oil and gas rights, air rights, development rights, water rights and water stock, drainage rights, zoning rights and other similar rights or interests which benefit or are appurtenant to the Property or the Improvements to the extent the same are assignable;

TOGETHER WITH all products of and proceeds from any of the tangible and intangible property described above.

All of the property described above is sometimes referred to as the Trust Property.

TO HAVE AND TO HOLD the Trust Property to the Trustee and its successors and assigns for the benefit of the Beneficiary and its successors and assigns, forever.

PROVIDED ALWAYS, that if all the Obligations are paid, performed and satisfied in full, then the lien and estate granted by this Trust Deed will be reconveyed.

This Trust Deed, the Note, and all other agreements and instruments executed at any time in connection with this Trust Deed, whether prior to or after the date hereof, are sometimes collectively referred to herein as the "Loan Documents."

TO PROTECT THE SECURITY OF THIS TRUST DEED, GRANTOR COVENANTS AND AGREES AS FOLLOWS:

# ARTICLE I
## Particular Covenants and Warranties of Grantor

1.01     ***Obligations Secured***.  This Trust Deed secures the following, collectively referred to as the "Obligations":

(a)     The payment of all indebtedness and the performance of all covenants and obligations of Grantor under the Loan Documents, whether such payments and performance are now due or become due in the future;

(b)     The payment and performance of all covenants and obligations in this Trust Deed, in the other Loan Documents and in all other security agreements, notes, agreements and undertakings now existing or executed in the future by Grantor with or for the benefit of Beneficiary; and

(c)     The payment and performance of any and all other indebtedness and obligations of Grantor to Beneficiary of any nature whatsoever, whether direct or indirect, primary or secondary, whenever and however arising and whether or not presently contemplated, and whether or not reflected in a written agreement or instrument.

1.02     ***Payment of Indebtedness, Performance of Covenants***.  Grantor will duly and punctually pay and perform all of the Obligations.

1.03     ***Property***.  Grantor warrants that it holds good and merchantable title to the Property and the Improvements, free and clear of all liens, encumbrances, reservations, restrictions, and easements except those specifically listed in Exhibit B attached to this Trust Deed.  Grantor covenants that it will forever defend Beneficiary's and Trustee's rights under this Trust Deed and the priority of this Trust Deed subject only to those exceptions to title listed in Exhibit B.

1.04     ***Further Assurances; Filing; Re-Filing; Etc.***

(a)     Grantor will execute, acknowledge and deliver, from time to time, such further instruments as Beneficiary or Trustee may reasonably require to accomplish the purposes of this Trust Deed.

(b)     Grantor, immediately upon the execution and delivery of this Trust Deed, and subsequently from time to time, will cooperate to the fullest extent reasonably possible to cause this Trust Deed, any security agreement, mortgage or deed of trust supplemental to this Trust Deed and each instrument of further assurance to be recorded and re-recorded in such manner and in such places as may be required by any present or future law in order to perfect, and continue perfected, the lien and estate of this Trust Deed.

(c)     Grantor will pay all filing and recording fees, and all expenses incident to the execution, filing, recording and acknowledgment of this Trust Deed, any security agreement, mortgage or deed of trust supplemental to this Trust Deed and any instrument of further assurance, and all federal, state, county and municipal taxes, assessments and charges arising out of or in connection with the execution, delivery, filing

-3-

and recording of this Trust Deed, any security agreement, mortgage or deed of trust supplemental to this Trust Deed or any instruments of further assurance.

     1.05    ***Compliance with Laws***.  Grantor further represents, warrants and covenants that Grantor and its operations upon the Property will at all times be conducted so as to comply in all material respects with all applicable laws, statutes, ordinances, regulations and codes of all federal, state and local governments (collectively "Laws"), and all covenants, conditions, easements and restrictions affecting the Property (collectively, "Covenants"):

     1.06    ***Definitions; Environmental Covenants; Warranties and Compliance.***

     (a)    For purposes of this section, Environmental Law means any federal, state or local law, statute, ordinance, or regulation pertaining to health, industrial hygiene, or environmental conditions on, under or about the Property, including the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 USC § 9601 et seq., and the Resource Conservation and Recovery Act of 1976, 42 USC § 6901 et seq.

     (b)    For the purposes of this section, "Hazardous Substance" includes:

     (i)    All "hazardous substances" as designated pursuant to 40 CFR Part 302;

     (ii)    All "hazardous wastes" within the meaning provided in 40 CFR 261.3;

     (iii)    All "extremely hazardous substances" as listed in 40 CFR Part 355;

     (iv)    All "hazardous chemicals" as defined under 29 CFR § 1910.1200(c);

     (v)    All "toxic chemicals" listed in 40 CFR Part 372;

     (vi)    Those substances defined as "hazardous" or "toxic" in the Hazardous Materials Transportation Act, 49 USC § 1801 et seq. or listed in 49 CFR Part 172;

     (vii)    All materials, wastes, and substances which are designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act, 33 USC § 1251 et seq. (33 USC § 1321) or listed pursuant to Section 3076 of the Clean Water Act (33 USC § 1317);

     (viii)    All "hazardous substances" as defined in Chapter 453 and 466 of Oregon Revised Statutes;

     (ix)    All materials, substances, and wastes which are or which contain (A) asbestos, (B) polychlorinated biphenyls, (C) explosives, except such explosives as are used during construction in accordance with law; (D) petroleum, and any fractions of petroleum; or (E) radioactive materials; and

     (x)    Such other substances, materials, and wastes which are or become regulated or classified as hazardous or toxic under federal, state, or local laws or regulations.

All of the preceding statutory or regulatory citations include amendments and similar statutes, rules, regulations and orders promulgated from time to time.

     (c)    Grantor will not use, generate, manufacture, produce, store, release, discharge, or dispose of on, under or about the Property or its ground water, or transport to or from the Property any

Hazardous Substance and will not permit any other person to do so except for such Hazardous Substances as may be used in the ordinary course of its business so long as such substances are stored and used in accordance with all applicable Environmental Laws, including those relating to licensure, notice and record keeping.

(d)    Grantor will keep and maintain the Property in compliance with, and will not cause or permit the Property, including groundwater, to be in violation of, any Environmental Law.

(e)    Grantor will give prompt written notice to Beneficiary of any one or more of the following:

(i)    any proceeding or inquiry by any governmental authority with respect to any alleged violation of any Environmental Law or the presence of any Hazardous Substance on the Property or the migration of any Hazardous Substances from the Property to any other premises;

(ii)    all known claims made or threatened by any person against Grantor or the Property relating to any loss or injury resulting from any Hazardous Substance or the violation of any Environmental Law;

(iii)    the existence of any Hazardous Substance on or about all or any portion of the Property, except such Hazardous Substances as may be used in the ordinary course of Grantor's business so long as such Hazardous Substances are stored and used in accordance with all applicable Environmental Laws; and

(iv)    Grantor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could in Grantor's judgment cause any restrictions on the ownership, occupancy, transferability or use of the Property under any Environmental Law.

(f)    Grantor will promptly provide to Beneficiary copies of all reports, documents and notices relating to the Property or Improvements provided to or received from any agency administering any Environmental Laws.  Beneficiary will have the right to join and participate, in its own name if it so elects, in any legal proceeding or action initiated with respect to the Property or Improvements in connection with any Environmental Law and have its attorney fees in connection with such participation paid by Grantor, if Beneficiary determines that such participation is necessary to protect its interest in the Trust Property.

(g)    If, at any time, Beneficiary has reason to believe that any release, discharge or disposal of any Hazardous Substance affecting the Property or Improvements has occurred or is threatened, or if Beneficiary has reason to believe that a violation of an Environmental Law has occurred or may occur with respect to the Property or Improvements, Beneficiary may require Grantor to obtain or may itself obtain, at Grantor's expense, an environmental assessment of such condition or threatened condition by a qualified environmental consultant.  Grantor, or Beneficiary, if applicable, shall promptly provide to the other a complete copy of any environmental assessment obtained by such party.

(h)    In the event that any investigation, site monitoring, containment, cleanup, removal, restoration or other remedial work of any kind or nature (the "Remedial Work") is required under any applicable local, state or federal law or regulation, any judicial order, or by any governmental agency or person because of, or in connection with, the current or future presence, suspected presence, release or suspected release of a Hazardous Substance in or into the air, soil, ground water, surface water or soil vapor, on, about, or under all or any portion of the Property or the contamination (whether presently existing or occurring after the date of this Trust Deed) of the buildings, facilities, soil, ground water, surface water, air or other elements on or under any other property as a result of Hazardous Substances emanating from the Property, Grantor will, within 30 days after written demand by Beneficiary for performance by Beneficiary (or such shorter period of time as

may be required under any applicable law, regulation, order or agreement), commence and then diligently prosecute to completion, all such Remedial Work. All costs and expenses of such Remedial Work will be paid by Grantor including Beneficiary's reasonable attorney fees and costs incurred in connection with monitoring or review of the legal aspects of such Remedial Work. In the event Grantor fails to timely commence, cause to be commenced or diligently prosecute such Remedial Work, Beneficiary may, but will not be required to, cause such Remedial Work to be performed, and all costs and expenses of, or incurred in connection with such Remedial Work, will become part of the indebtedness secured by this Trust Deed and will bear interest until paid at the rate provided in the Note.

        **(i)**    Grantor will protect, indemnify and hold harmless Beneficiary, its directors, officers, employees, agents, successors and assigns from and against any and all loss, damage, cost, expense or liability (including reasonable attorney fees and costs) directly or indirectly arising out of or attributable to Grantor's use, generation, manufacture, production, storage, release, threatened release, discharge or disposal, of a Hazardous Substance on, under or about the Property, including the costs of any required repair, cleanup, containment or detoxification of the Property and the preparation and implementation of any closure, remedial or other required plans.

        **(j)**    Grantor represents and warrants to Beneficiary that:

        **(i)**    Grantor is not in violation of or subject to any existing, pending or threatened investigation by any governmental authority under any Environmental Law.

        **(ii)**    Grantor has not and is not required by any Environmental Law to obtain any permit or license beyond what it has obtained to use the Improvements.

        **(k)**    All representations, warranties, and covenants in this Section 1.06 will survive the satisfaction of the Obligations, the reconveyance of the Trust Property, and/or the foreclosure of this Trust Deed by any means.

    1.07   ***Maintenance and Improvements***.  Grantor will not permit all or any part of the Improvements to be removed, demolished or materially altered without Beneficiary's prior written consent; provided, however, that Grantor may remove, demolish, or materially alter such Improvements as become obsolete in the usual conduct of Grantor's business, if the removal or material alteration does not materially detract from the operation of the Grantor's business and if Improvements which are demolished or removed are promptly replaced with Improvements of like value and quality. Grantor will maintain the Property and Improvements in good repair, working order and condition, except for reasonable wear and use, and will at Beneficiary's election restore, replace or rebuild all or any part of the Improvements now or at any time in the future damaged or destroyed by any casualty (whether or not insured against or insurable) or affected by any Condemnation (as defined in Section 2.01). Grantor will not commit, permit or suffer any waste or deterioration of the Trust Property. Grantor will give Beneficiary no less than 10 days prior notice before commencing any construction, alteration or improvement on the Property exceeding $20,000 in cost.

    1.08   ***Liens***. Grantor will not create or suffer or permit to be created any mortgage, deed of trust, lien, security interest, charge or encumbrance upon the Trust Property prior to, on a parity with, or subordinate to the lien of this Trust Deed, except as specifically provided in <u>Exhibit B</u> attached to this Trust Deed.

    1.09   ***Impositions***.

        **(a)**    Grantor will pay or cause to be paid, when due and before any fine, penalty, interest or cost attaches, all taxes, assessments, utility charges and all other governmental or nongovernmental charges or levies now or at any time in the future assessed or levied against any part of the Trust Property (including

levies or charges resulting from Covenants affecting the Trust Property) or upon the lien or estate of the Beneficiary or Trustee in the Trust Property (collectively, the "Impositions"); provided, however, that if by law any such Imposition may be paid in installments (whether or not interest will accrue on the unpaid balance), the Grantor may pay such Imposition in installments (together with accrued interest, if any, on the unpaid balance) as they become due, before any fine, penalty or cost attaches. Grantor will also pay when due all claims for labor, materials or supplies that, if unpaid, might become a lien on all or any portion of the Trust Property.

(b)    Grantor may, at its expense and after prior notice to Beneficiary, contest by appropriate legal, administrative or other proceedings conducted in good faith and with due diligence, the amount, validity or application, in whole or in part, of any Imposition or lien for any Imposition or any claim or lien of any laborer, materialman, supplier or vendor, and may withhold payment of such claim, lien or Imposition pending completion of such proceedings if permitted by law, provided that: (i) such proceedings will suspend collection from the Trust Property; (ii) neither the Trust Property, in whole or in part, nor any interest in the Trust Property will be sold, forfeited or lost if Grantor pays the amount or satisfies the condition being contested, and Grantor would have the opportunity to do so in the event of Grantor's failure to prevail in the contest; (iii) neither Beneficiary nor Trustee will, by virtue of such permitted contest, be exposed to any risk of any liability for which Grantor has not furnished additional security as provided in clause (iv) below; and (iv) Grantor will have furnished to Beneficiary additional security in respect of the claim being contested or the loss or damage which may result from Grantor's failure to prevail in such contest in such form and amount as may be reasonably requested by Beneficiary.

(c)    Grantor shall furnish to Beneficiary promptly upon request reasonably satisfactory evidence of the payment of all Impositions. Beneficiary is hereby authorized to request and receive from the responsible governmental and non-governmental personnel written statements with respect to the accrual and payment of all Impositions.

1.10    ***Books and Records; Inspection of the Property***. Grantor will keep complete and accurate records and books of account in accordance with generally accepted accounting principles consistently applied (it being understood that interim financial statements may be subject to year-end adjustments and not include footnotes) and will permit Trustee, Beneficiary and their authorized representatives to enter and inspect the Property and the Improvements, to examine and make copies or extracts of the records and books of account of the Grantor with respect to the Property and the Improvements, all at such reasonable times and upon reasonable notice as may be requested by Beneficiary or Trustee; provided that such inspections shall be conducted so as not to unreasonably interfere with Grantor's use and occupancy of the Trust Property and that any information obtained therefrom shall be held in confidence by Beneficiary and Trustee.

1.11    ***Limitations of Use***. Grantor will not initiate, join in, or consent to any rezoning of the Property or any change in any private restrictive covenant, or other public or private restrictions limiting or defining the uses that may be made of all or any part of the Property and the Improvements without the prior written consent of Beneficiary.

1.12    ***Insurance***.

(a)    ***Property and Other Insurance***. Grantor will obtain and maintain in full force and effect during the term of this Trust Deed (i) all risk property insurance together with endorsements for replacement cost coverage, inflation adjustment, and vandalism and malicious mischief coverage, all in amounts not less than the full replacement cost of all Improvements; (ii) comprehensive general liability insurance with limits, coverages, risks insured and waiver of subrogation clauses reasonably acceptable to Beneficiary, and in no event less than $2,000,000 combined single limit coverage; and (iii) unless Beneficiary otherwise agrees in writing, rent loss or business interruption insurance in an amount no less than the total annual rents provided for in all leases for all or any portion of the Trust Property. In addition, Grantor will obtain and maintain all

such other insurance coverages which at the time are commonly carried for similar property, in such amounts as Beneficiary may reasonably require.

      (b)   ***Insurance Companies and Policies***. All insurance will be written by a company or companies reasonably acceptable to Beneficiary; will contain a mortgagee clause in favor of Beneficiary with loss proceeds under any policy payable to Beneficiary, subject to the terms of this Trust Deed; will require 30 days' prior written notice to Beneficiary of cancellation or reduction in coverage; will contain endorsements that no act or negligence of Grantor or any occupant, and no occupancy or use of the Property for purposes more hazardous than permitted by the terms of the policy will affect the validity or enforceability of such insurance as against Beneficiary; will be in full force and effect on the date of this Trust Deed; and will be accompanied by proof of premiums paid for the current policy year. Beneficiary will be named as an additional insured on all liability policies. Grantor will forward to Beneficiary, upon request, a certificate evidencing the coverages required under this Trust Deed and copies of all policies.

      (c)   ***Blanket Policy***. If a blanket policy is issued, a certified copy of that policy will be furnished together with a certificate indicating that Beneficiary is an insured under that policy in the proper designated amount.

      (d)   ***Insurance Proceeds***. All proceeds from any insurance on the Property will be used in accordance with the provisions of Section 1.14.

    1.13   ***Assignments of Policies Upon Foreclosure***. In the event of foreclosure of the lien of this Trust Deed or other transfer of title or assignment of the Trust Property in whole or in part, all right, title and interest of Grantor in and to all policies of insurance procured under Section 1.12 will inure to the benefit of and pass to the successors in interest of Grantor or the purchaser or grantee of all or any part of the Trust Property.

    1.14   ***Casualty/Loss Restoration***.

      (a)   After the occurrence of any casualty to the Property, whether or not required to be insured against as provided in this Trust Deed, Grantor will give prompt written notice of such casualty to Beneficiary, specifically describing its nature and cause and the extent of the damage or destruction to the Property and Improvements. Beneficiary may make proof of loss if it is not made promptly by Grantor.

      (b)   Grantor assigns to Beneficiary all insurance proceeds which Grantor may be entitled to receive with respect to any casualty. Beneficiary may, at its option, apply all or any portion of the insurance proceeds to the reduction of the Obligations in such order as Beneficiary may determine, whether or not such obligations are then due, or apply all or any portion of the insurance proceeds to the cost of restoring and rebuilding the portion of the Property and Improvements that were damaged or destroyed.

    1.15   ***Actions to Protect Trust Property***. If Grantor fails to obtain the insurance required by Section 1.12, to make the payments required by Section 1.09 (other than payments which the Grantor is contesting in accordance with Section 1.09(b)) or to perform or observe any of its other covenants or agreements under this Trust Deed, Beneficiary may, without obligation to do so, obtain such insurance or make such payments, or take other action which it deems appropriate to remedy such failure. All sums, including reasonable attorney fees, so expended or expended to maintain the lien or estate of this Trust Deed or its priority, or to protect or enforce any of Beneficiary's rights under this Trust Deed, or to recover any indebtedness secured by this Trust Deed, will be a lien on the Trust Property, will be secured by this Trust Deed, and will be paid by Grantor upon demand, together with interest at the default rate provided in the Note. No payment or other action by Beneficiary under this section will impair any right or remedy available to

Beneficiary or constitute a waiver of any default. In connection with the preceding, the following disclosure is made pursuant to Oregon statute (ORS 746.201):

## WARNING

**Unless Grantor provides Beneficiary with evidence of the insurance coverage as required by this Trust Deed, Beneficiary may purchase insurance at Grantor's expense to protect Beneficiary's interest. This insurance may, but need not, also protect Grantor's interest. If the collateral becomes damaged, the coverage Beneficiary purchases may not pay any claim Grantor makes or any claim made against Grantor. Grantor may later cancel this coverage by providing evidence that Grantor has obtained property coverage elsewhere.**

**Grantor is responsible for the cost of any insurance purchased by Beneficiary. The cost of this insurance may be added to Grantor's contract or loan balance. If the cost is added to Grantor's contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date Grantor's prior coverage lapsed or the date Grantor failed to provide proof of coverage.**

**The coverage Beneficiary purchases may be considerably more expensive than insurance Grantor can obtain on its own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by applicable law.**

1.16    *Estoppel Certificates*.  Grantor, within ten (10) days of request, will furnish Trustee and Beneficiary a written statement, duly acknowledged, of the amount of the Obligations secured by this Trust Deed and whether any offsets or defenses exist against the Obligations.  If Grantor fails to furnish such a statement within the time allowed, Beneficiary will be authorized, as Grantor's attorney-in-fact, to execute and deliver such statement.  Upon request, Grantor will also use its reasonable efforts to obtain and deliver to Beneficiary a written certificate from each lessee of all or any part of the Trust Property that its lease is in effect, that there are no defaults by the lessor under such lease, or if any such defaults exist, identifying the same, and that rent is not paid more than 30 days in advance.

## ARTICLE II
### Condemnation

2.01    *Condemnation*.

(a)    Should all or any part of the Trust Property or interest in the Trust Property be taken or damaged by reason of any public improvement, eminent domain or condemnation proceeding, or in any other manner (a "Condemnation"), or should Grantor receive any notice or other information regarding such proceeding, Grantor will give immediate notice to Beneficiary.

(b)    Beneficiary will be entitled to all compensation, awards and other payments ("Condemnation Proceeds") or relief, and will be entitled, at its option, to commence, appear in and prosecute any Condemnation proceeding in its own or Grantor's name and make any compromise or settlement in connection with such Condemnation.  If the Trust Property is taken in its entirety by condemnation, all Obligations secured by this Trust Deed, at Beneficiary's election, will become immediately due and collectible.

(c)    Beneficiary may, at its sole option, apply all or any part of the Condemnation Proceeds to the reduction of the Obligations in such order as Beneficiary may determine, or apply all or any part of the

Condemnation Proceeds to the cost of restoring and improving the remaining Property and Improvements. In the event that Beneficiary elects to apply the Condemnation Proceeds to restoration and improvement, those proceeds will be held by Beneficiary and will be released only upon such terms and conditions as Beneficiary may require, including prior approval of plans and release of liens. No Condemnation Proceeds will be released if Grantor is in default under this Trust Deed.

# ARTICLE III
## Assignments of Leases, Rents, Issues and Profits

3.01    **Assignment**. Grantor assigns and transfers to Beneficiary (a) all leases, subleases, licenses, rental contracts and other agreements, both now existing and arising at any time in the future, relating to the occupancy or use of all or any portion of the Trust Property, including all modifications, extensions and renewals (the "Leases"), and (b) all rents, revenues, issues, profits, income, proceeds and benefits derived from the Trust Property and the lease, rental or license of all or any portion of the Trust Property, including lease and security deposits (collectively, the "Rents"). This assignment is intended by Grantor and Beneficiary to create a present and unconditional assignment to Beneficiary, subject only to the license set forth in Section 3.04 below.

3.02    **Rights of Beneficiary**. Subject to the provisions of Section 3.04 below giving Grantor a revocable, limited license, Beneficiary will have the right, power and authority to:

(a)    notify tenants, renters, licensees and other obligors under any of the Leases that the Leases have been assigned to Beneficiary and that all Rents are to be paid directly to Beneficiary, whether or not Beneficiary has foreclosed or commenced foreclosure proceedings against the Trust Property, and whether or not Beneficiary has taken possession of the Trust Property;

(b)    to discount, settle, compromise, release or extend the time for payment of, any amounts owing under any of the Leases and any Rents on terms acceptable to Beneficiary;

(c)    to collect and enforce payment of Rents and all provisions of the Leases, and to prosecute any action or proceeding, in the name of Grantor or Beneficiary, with respect to any and all Leases and Rents; and

(d)    to exercise any and all other rights and remedies of the lessor in connection with any of the Leases and Rents.

3.03    **Application of Receipts**. Beneficiary will have the right, power and authority to use and apply any Rents received under this Article III (a) for the payment of costs and expenses incurred in connection with enforcing or defending the terms of or the rights of Beneficiary under this assignment and in collecting any Rents; and (b) for the operation and maintenance of the Trust Property and the payment of all costs and expenses in connection with such operation and maintenance, including the payment of utilities, taxes, assessments, governmental charges and insurance. After the payment of all such costs and expenses, and after Beneficiary has set up such reserves as it deems necessary in its sole discretion for the proper management of the Trust Property, Beneficiary will apply all remaining Rents collected and received by it to the reduction of the Obligations in such order as Beneficiary determines. The exercise or failure by Beneficiary to exercise any of the rights or powers granted in this assignment will not constitute a wavier of default by Grantor under this Trust Deed, or any of the other Loan Documents.

3.04    **License**. Beneficiary grants to Grantor a revocable license to collect and receive the Rents. Such license may be revoked by Beneficiary, without notice to Grantor, upon the occurrence of any event of default under this Trust Deed, including any default by Grantor of its covenants in this Article III. Unless and

-10-

until such license is revoked, Grantor agrees to apply the proceeds of Rents to the payment of the Obligations and to the payment of taxes, assessments, governmental charges, insurance premiums and other obligations in connection with the Trust Property, and to the maintenance of the Trust Property, before using such proceeds for any other purpose. Grantor agrees to (a) observe and perform every obligation of Grantor under the Leases; (b) enforce or secure at its expense the performance of every obligation to be performed by any lessee or other party under the Leases; (c) promptly give notice to Beneficiary of any default by any such lessee or other party under any of the Leases, and promptly provide Beneficiary a copy of any notice of default given to any such lessee or other party; (d) not collect any Rents more than 30 days in advance of the time when they become due, or anticipate any other payments under the Leases, except for bona fide security deposits not in excess of an amount equal to two months' rent; (e) not further assign or hypothecate any of the Leases or Rents; (f) except with Beneficiary's prior written consent, not waive, release, or in any other manner discharge any lessee or other party from any of its obligations under any of the Leases; (g) except with Beneficiary's prior written consent, not modify or amend any of the Leases; (h) except with Beneficiary's prior written consent, not cancel, terminate, or accept surrender of any of the Leases unless Grantor has entered into a Lease for the space to be vacated upon terms at least as favorable to Grantor, commencing within 30 days after such cancellation, termination or surrender; (i) obtain Beneficiary's prior written approval as to the form and content of all future Leases and any modifications of any present or future leases; (j) promptly deliver copies of all present and future Leases to Beneficiary; and (k) appear in and defend, at Grantor's sole cost and expense, any action or proceeding arising out of or in connection with the Leases or the Rents.

       3.05    ***Limitation of Beneficiary's Obligations***. Notwithstanding the assignment provided for in this Article III, Beneficiary will not be obligated to perform or discharge, and Beneficiary does not undertake to perform or discharge, any obligation or liability with respect to the Leases or the Rents. This assignment will not operate to place responsibility for the control, care, maintenance or repair of the Trust Property upon Beneficiary, or to make Beneficiary responsible for any condition of the Property. Beneficiary will be accountable to Grantor only for sums actually collected and received by Beneficiary pursuant to this assignment. Grantor shall hold Beneficiary fully harmless from, indemnify Beneficiary for and defend Beneficiary against any and all claims, demands, liabilities, losses, damages and expenses, including attorney fees, arising out of any of the Leases, with respect to any of the Rents, or in connection with any claim which may be asserted against Beneficiary on account of this assignment or any obligation or undertaking alleged to arise from such assignment.

       3.06    ***Termination***. The assignment provided for in this Article III shall continue in full force and effect until all of the Obligations have been fully paid and satisfied and the Loan Documents have been terminated. At such time, this assignment and the authority and powers in this Article III granted by Grantor to Beneficiary will terminate.

       3.07    ***Attorney-in-Fact***. Grantor irrevocably constitutes and appoints Beneficiary, and each of its officers, as its true and lawfully attorney-in-fact, with power of substitution, to undertake and execute any and all of the rights, powers and authorities described in this Article III with the same force and effect as if undertaken or performed by Grantor, and Grantor ratifies and confirms any and all such actions which may be taken or omitted to be taken by Beneficiary, its employees, agents and attorneys.

# ARTICLE IV
## Security Agreement and Fixture Filing

       4.01    To secure the Obligations, Grantor grants to Beneficiary a security interest in the following: (i) the Trust Property to the extent it is not encumbered by this Trust Deed as a first priority real estate lien; (ii) all personal property that is used or will be used in the construction of any Improvements on the Trust Property; (iii) all personal property that is now or will in the future be placed on or in the Trust Property or Improvements;

Torres Decl. ex.11
Page 12 of 20

(iv) all personal property that is derived from or used in connection with the use, occupancy, or enjoyment of the Trust Property; (v) all property defined in the Uniform Commercial Code as adopted in the state of Oregon as accounts, equipment, fixtures, and general intangibles, to the extent the same are used at, or arise in connection with the ownership, maintenance, or operation of, the Trust Property; (vi) all causes of action, claims, security deposits, advance rental payments, utility deposits, refunds of fees or deposits paid to any governmental authority, refunds of taxes, and refunds of insurance premiums relating to the Trust Property; and (vii) all present and future attachments, accessions, amendments, replacements, additions, products, and proceeds of every nature of the preceding. This Trust Deed constitutes a security agreement and "fixture filing" under the Uniform Commercial Code-Secured Transactions statutes of the state of Oregon. The mailing address of Grantor and the address of Beneficiary from which information may be obtained are set forth in the introductory paragraph of this Trust Deed.

## ARTICLE V
### Events of Default; Remedies

5.01    **Events of Default**. Each of the following will constitute an Event of Default under this Trust Deed and under each of the other Loan Documents:

(a)    **Nonpayment**. Failure of Grantor to pay any of the Obligations, including payments required by this Trust Deed or any other Loan Document, on or before the due date.

(b)    **Breach of Other Covenants**. Failure of Grantor to perform or abide by any other covenant included in the Obligations, including those covenants in this Trust Deed and in any other Loan Document, within five (5) days after written notice from Lender advising Grantor of such failure.

(c)    **Misinformation**. Falsity when made in any material respect of any representation, warranty or information furnished by Grantor or its agents to Beneficiary in or in connection with any of the Obligations.

(d)    **Other Default**. The occurrence of any other event of default under the Note or any other document evidencing or securing the Note.

(e)    **Bankruptcy**. The occurrence of any of the following with respect to the Property, Grantor, or the then owner of the Property or Improvements: (i) appointment of a receiver, liquidator, or trustee which is not dismissed or removed within 30 days of appointment; (ii) adjudication as a bankrupt or insolvent; (iii) voluntary filing of any petition under any state or federal bankruptcy, reorganization, moratorium or insolvency law or an involuntary filing of any such petition which is not dismissed or removed within 30 days; (iv) institution of any proceeding for dissolution or liquidation; (v) inability to pay debts when due; (vi) any general assignment for the benefit of creditors; or (vii) abandonment of the Property or Improvements for more than 30 days without reasonable justification.

(f)    **Transfer; Due-on-Sale; Due-on-Encumbrance**. Any sale, gift, conveyance, contract for conveyance, transfer, assignment, encumbrance, pledge or grant of a security interest in all or any part of the Trust Property or any interest in the Trust Property, either voluntarily, involuntarily, or by the operation of law (a "Transfer"), without Beneficiary's prior written consent. The provisions of this subsection (f) will apply to each and every Transfer, regardless of whether or not Beneficiary has consented or waived its rights in connection with any previous Transfer. Beneficiary may attach such conditions to its consent under this subsection (f) as Beneficiary may determine in its sole discretion, including an increase in the interest rate or the payment of transfer or assumption fees, payment of administrative and legal fees and costs incurred by Beneficiary.

-12-

(g)    *Certain Taxes*.  For purposes of this subsection (g), "State Tax" means:

(i)    A specific tax on mortgages, trust deeds, secured indebtedness or any part of the indebtedness secured by this Trust Deed.

(ii)    A specific tax on the grantor of property subject to a trust deed which the taxpayer is authorized or required to deduct from payments on the trust deed.

(iii)    A tax on property chargeable against the Beneficiary or Trustee under a trust deed or holder of the note securing such a trust deed.

(iv)    A specific tax (other than an income tax or a gross receipts tax) on all or any portion of the indebtedness or on payments of principal and interest made by Grantor.

If any State Tax is enacted after the date of this Trust Deed and is applicable to this Trust Deed, enactment of the State Tax will constitute an event of default, unless the following conditions are met:

(y)    Grantor may lawfully pay the tax or charge imposed by the State Tax without causing any resulting economic disadvantage or increase of tax to Beneficiary or Trustee, and

(z)    Grantor pays or agrees in writing to pay the tax or charge within thirty (30) days after notice from Beneficiary or Trustee that the State Tax has been enacted.

5.02    *Remedies in Case of Default*.  If an Event of Default occurs, Beneficiary or Trustee, as the case may be, may exercise any one or more of the following rights and remedies, in addition to any other remedies which may be available by law, in equity, or otherwise:

(a)    *Acceleration*.    Beneficiary may declare all or any portion of the Obligations immediately due and payable.

(b)    *Receiver*.    Beneficiary may have a receiver appointed for the Trust Property. Beneficiary will be entitled to the appointment of a receiver as a matter of right whether or not the apparent value of the Trust Property exceeds the amount of the indebtedness secured by this Trust Deed.  Employment by Trustee or Beneficiary will not disqualify a person from serving as receiver.  Grantor consents to the appointment of a receiver at Beneficiary's option and waives any and all defenses to such an appointment.

(c)    *Possession*.    Beneficiary may, either through a receiver or as lender-in-possession, enter and take possession of all or any part of the Trust Property and use, operate, manage and control it as the Beneficiary deems appropriate in its sole discretion.  Upon request after an Event of Default, Grantor will peacefully relinquish possession and control of the Trust Property to Beneficiary or any receiver appointed under this Trust Deed.

(d)    *Rents*.    Beneficiary may revoke Grantor's right to collect the Rents, and may, either itself or through a receiver, collect the Rents.  Beneficiary will not be deemed to be in possession of the Property solely by reason of exercise of the rights contained in this subsection (d).  If Rents are collected by Beneficiary under this subsection (d), Grantor irrevocably appoints Beneficiary as Grantor's attorney-in-fact, with power of substitution, to endorse instruments received in payment of Rents in the name of Grantor and to negotiate and collect the proceeds of such instruments.  After payment of all Obligations, any remaining amounts will be paid to Grantor and this power will terminate.

-13-

        (e)      ***Power of Sale***.  Beneficiary may direct Trustee, and Trustee will be empowered, to foreclose the Property by advertisement and sale under applicable law.

        (f)      ***Foreclosure***.  Beneficiary may judicially foreclose this Trust Deed and obtain a judgment foreclosing Grantor's interest in all or any part of the Property and giving Beneficiary the right to collect any deficiency remaining due after disposition of the Trust Property.

        (g)      ***Fixtures and Personal Property***.  With respect to any fixtures or personal property subject to a security interest in favor of Beneficiary, Beneficiary may exercise any and all of the rights and remedies of a secured party under the Uniform Commercial Code.

        (h)      ***Abandonment***.  Beneficiary may abandon all or any portion of the Trust Property by written notice to Grantor.

    5.03    ***Sale***.  In any sale under this Trust Deed or pursuant to any judgment, the Trust Property, to the extent permitted by law, may be sold as an entirety or in one or more parcels and in such order as Beneficiary may elect, without regard to the right of Grantor, any person claiming under Grantor or any guarantor or surety to the marshaling of assets.  The purchaser at any such sale will take title to the Trust Property or the part of the Trust Property sold free and clear of the estate of Grantor, the purchaser being discharged from all liability to see to the application of the purchase money.  Any person, including Beneficiary, may purchase at any such sale.  Grantor irrevocably appoints Beneficiary as Grantor's attorney-in-fact, with power of substitution, to make all appropriate transfers and deliveries of all or any part of the Trust Property so sold and, for that purpose, Beneficiary may execute all appropriate instruments of transfer.  Nevertheless, Grantor will ratify and confirm, or cause to be ratified and confirmed, any such sale or sales by executing and delivering, or by causing to be executed and delivered, to Beneficiary or to such purchaser or purchasers all such instruments as may be advisable, in the judgment of Beneficiary, for such purpose.

    5.04    ***Cumulative Remedies***.  All remedies under this Trust Deed are cumulative and not exclusive.  Any election to pursue one remedy will not preclude any other remedy.  An election by Beneficiary to cure under Section 1.15 will not constitute a waiver of the default or of any of the remedies provided in this Trust Deed.  No delay or omission in exercising any right or remedy will impair that or any other right or remedy or constitute a waiver of the default.

    5.05    ***Receiver or Trustee-in-Possession***.  Upon taking possession of all or any part of the Trust Property, Trustee, Beneficiary or a receiver may:

        (a)      ***Management***.  Use, operate, manage, control and conduct business with the Trust Property and make expenditures for such purposes and for maintenance and improvements as are reasonably necessary.

        (b)      ***Rents and Revenues***.  Collect all rents, revenues, income, issues and profits from the Trust Property and apply such sums to the reasonable expenses of use, operation, management, maintenance and improvements.

        (c)      ***Construction***.  At its option, complete any construction in progress on the Property, and in that connection pay bills, borrow funds, employ contractors and make any changes in plans and specifications as it deems appropriate.

        (d)      ***Additional Indebtedness***.  If the revenues produced by the Trust Property are insufficient to pay expenses, Beneficiary, Trustee or the receiver may borrow or advance such sums upon such terms as it deems reasonably necessary for the purposes stated in this section.  All advances will bear interest,

Torres Decl. ex.11
Page 15 of 20

unless otherwise provided, at the rate set forth in the Note, and repayment of such sums will be secured by this Trust Deed.

5.06    *Application of Proceeds*.  All proceeds realized from the exercise of the rights and remedies under this Article V will be applied as follows:

(a)    *Costs and Expenses*.  To pay all costs of exercising such rights and remedies, including the costs of maintaining and preserving the Trust Property, the costs and expenses of any receiver or lender-in-possession, the costs of any sale, and the costs and expenses provided for in Section 6.07 below.

(b)    *Indebtedness*.  To pay all Obligations, in such order as Beneficiary deems appropriate in its sole discretion.

(c)    *Surplus*.  The surplus, if any, remaining after satisfaction of all the Obligations will be paid to the clerk of the court in the case of a judicial foreclosure proceeding, otherwise to the person or persons legally entitled to such surplus.

5.07    *Deficiency*.  No sale or other disposition of all or any part of the Trust Property pursuant to this Article V will be deemed to relieve Grantor of any of the Obligations, except to the extent the proceeds of such sale or disposition are applied to the payment of such Obligations.  If the proceeds of sale, collection or other realization of or upon the Trust Property are insufficient to cover the costs and expenses of such realization and the payment in full of the Obligations, Grantor will remain liable for any deficiency.

5.08    *Waiver of Stay, Extension, Moratorium and Valuation Laws*.  To the fullest extent permitted by law, Grantor waives the benefit of any existing or future stay, extension or moratorium law which may affect observance or performance of the provisions of this Trust Deed and any existing or future law providing for the valuation or appraisal of the Trust Property prior to any sale.

## ARTICLE VI
### General Provisions

6.01    *Time Is of the Essence*.  Time is of the essence with respect to all covenants and obligations of Grantor under this Trust Deed.
*Reconveyance by Trustee*.  At any time upon the request of Beneficiary, payment of Trustee's fees, if any, and presentation of this Trust Deed, without affecting liability of any persons for the payment of the Obligations, Trustee may reconvey, without warranty, all or any part of the Trust Property.  The grantee in any reconveyance may be described as the "person or persons legally entitled to the property conveyed," and the recitals of any facts in such reconveyance will be conclusive proof of their truthfulness.  Grantor shall pay: all costs, fees and expenses of this Trust Deed, including, without limiting the generality of the foregoing, the fees of Trustee for issuance of any Deed of Partial Release and Partial Reconveyance or Deed of Release and Full Reconveyance as well as Beneficiary costs, fees and expenses associated with the facilitation and tracking of works performed, or to be performed, by Trustee in an amount not to exceed $550.00 and all lawful charges, costs and expenses in the event of reinstatement of, following default in, this Trust Deed or the obligations secured hereby.

6.02    *Notice*.  Except as otherwise provided in this Trust Deed, all notices permitted or required by this Trust Deed will be in writing and may be delivered by hand, or mailed by first class, registered or certified mail, return receipt requested, postage prepaid, and addressed to the appropriate party at its address set forth at the outset of this Trust Deed.  Any party may change its address for such notices from time to time by notice

-15-

to the other parties. Notices given by mail in accordance with this paragraph will be deemed to have been given upon the date of mailing; notices given by hand will be deemed to have been given when received.

6.03    ***Substitute Trustee***.  In the event of dissolution or resignation of Trustee, Beneficiary may substitute one or more trustees to execute the trust created by this Trust Deed, and the new trustee(s) will succeed to all the powers and duties of the prior trustee(s).

6.04    ***Trust Deed Binding on Successors and Assigns***.  This Trust Deed will be binding upon and inure to the benefit of the successors and assigns of Grantor, Trustee and Beneficiary. If the Trust Property or any portion thereof shall at any time be vested in any person other than Grantor, Beneficiary shall have the right to deal with such successor regarding this Trust Deed, the Trust Property, and the Obligations in such manner as Beneficiary deems appropriate in its sole discretion, without notice to or approval by Grantor and without impairing Grantor's liability for the Obligations.

6.05    ***Indemnity***.  Grantor will hold Beneficiary and Trustee and their respective directors, officers, employees, agents and attorneys, harmless from and indemnify them for any and all claims, demands, damages, liabilities and expenses, including attorney fees and court costs, arising out of or in connection with Trustee's or Beneficiary's interest under this Trust Deed, except Grantor will not be liable for acts performed by the Beneficiary or Trustee in violation of applicable law.

6.06    ***Expenses and Attorney Fees***.  If Beneficiary refers any of the Obligations to an attorney for collection or seeks legal advice following a default; if Beneficiary is the prevailing party in any litigation instituted in connection with any of the Obligations; or if Beneficiary or any other person initiates any judicial or nonjudicial action, suit or proceeding in connection with any of the Obligations or the Trust Property (including proceedings under federal bankruptcy law, eminent domain, under probate proceedings or in connection with any state or federal tax lien), and an attorney is employed by Beneficiary to (a) appear in any such action, suit or proceeding, or (b) reclaim, seek relief from a judicial or statutory stay, sequester, protect, preserve or enforce Beneficiary's interests, then in any such event Grantor will pay reasonable attorney fees, costs and expenses incurred by Beneficiary and/or its attorney in connection with the above mentioned events or any appeals related to such events, including costs incurred in searching records, the cost of title reports and the cost of surveyors' reports.  Such amounts will be secured by this Trust Deed and, if not paid upon demand, will bear interest at the default rate specified in the Note.

6.07    ***Applicable Law***.  The laws of the state of Oregon will govern the validity, interpretation, performance and enforcement of this Trust Deed.

6.08    ***Captions***.  The captions to the sections and paragraphs of this Trust Deed are included only for the convenience of the parties and will not have the effect of defining, diminishing or enlarging the rights of the parties or affecting the construction or interpretation of any portion of this Trust Deed.

6.09    ***"Includes" or "Including" Defined***.  As used in this Trust Deed, the words "includes" and "including" are not limiting.

6.10    ***"Person" Defined***.  As used in this Trust Deed, the word "person" means any natural person, partnership, trust, corporation or other legal entity of any nature.

6.11    ***Severability***.  If any provision of this Trust Deed is held to be invalid, illegal or unenforceable, such invalidity, illegality or unenforceability will not affect any other provisions of this Trust Deed, and such other provisions will be construed as if the invalid, illegal or unenforceable provision had never been contained in this Trust Deed.

-16-

6.12    *Entire Agreement*.  This Trust Deed together with the Loan Documents contains the entire agreement of the parties with respect to the subject matter hereof.  No prior agreement, statement or promise made by any party to this Trust Deed which is not contained in this Trust Deed will be binding or valid.

6.13    *Commercial Property*.  Grantor covenants and warrants that the Property and Improvements are used by Grantor exclusively for business and commercial purposes.  Grantor also covenants and warrants that the Property and Improvements are not now, and at no time in the future will be, occupied as the principal residence of Grantor, Grantor's spouse, or Grantor's minor or dependent child.

6.14    *Counterparts*.  This Trust Deed may be executed in two or more counterparts, each of which will be considered an original, but all of which together will constitute the same instrument.

6.15    *Participation Interests*.  Beneficiary may, without the consent of Grantor, at any time grant one or more participation interests in the Loan Documents to any person.

6.16    *WARNING (ORS 93.040)*.  BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. THIS INSTRUMENT DOES NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

6.17    *Use*.  The following disclosure is required by Oregon law (ORS 90.040):

"THIS INSTRUMENT WILL NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS.  BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY APPROVED USES AND TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES AS DEFINED IN ORS 30.930."

6.18    *STATUTORY DISCLOSURE*.  UNDER OREGON LAW, MOST AGREEMENTS, PROMISES AND COMMITMENTS MADE BY LENDER CONCERNING LOANS AND OTHER CREDIT EXTENSIONS WHICH ARE NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES OR SECURED SOLELY BY THE BORROWER'S RESIDENCE MUST BE IN WRITING, EXPRESS CONSIDERATION AND BE SIGNED BY THE LENDER TO BE ENFORCEABLE.

**[SIGNATURE PAGE FOLLOWS]**

IN WITNESS WHEREOF, the Grantor has executed this Trust Deed as of the date first set forth above.

"Grantor"

Adult Care Search, Inc., an Oregon Corporation

By: _____

Ali Zamani

STATE OF Oregon            )
                                        ) ss.
County of Clackamas        )

The foregoing instrument was acknowledged before me this 31 day of April, 2017, by Ali Zamani, Officer of Adult Care Search, Inc.

OFFICIAL STAMP
ANGELA BIXLER ANDERSON
NOTARY PUBLIC-OREGON
COMMISSION NO. 931805A
MY COMMISSION EXPIRES SEPTEMBER 04, 2019

Angela B Anderson
Notary Public in and for the State of Oregon
ANGELA B ANDERSON
Print Notary Name
Residing at: Oregon
My Commission Expires: Sept 04, 2019

-18-

## EXHIBIT A

### Real Property Description

Legal Description: Lot 16, Bear Creek Estates P.U.D., recorded January 25, 2006, in Cabinet G, Page 1027, Deschutes County, Oregon, being a portion of Parcel 4 of Bear Creek Village Condominium Stage 1, recorded August 10, 2001, in Cabinet E, Page 682, Deschutes County, Oregon.

APN: 251281

Situs Address:           135 NE Telima Lane
                         Bend, OR 97701



●●●○○ T-Mobile  LTE          12:52 PM          ⊙ ✳ 42% ◼▬

❮ Chats                    **Ali**                        Ⓐ
                last seen yesterday at 12:18 PM

Lot going on here... too much to text.
Start St. V's next week then fly out to
Salinas to work.
My mom still in hospital, total knee
done yesterday, some cardiac issues.
To update you, proposed settlement
offer of 730K into Roth IRA and Bend
home (400K) plus $3500 month child
support plus $1500 for education fund
monthly, plus health expenses paid up
until age 18. I have two weeks to
respond. What do you think about this?

                                    9:35 AM ✓✓

What are the total values of all your
properties combine.  What are the
market values of each and what are the
equity of each.   So I have a better
understanding of your situation before
I can make you an opinion for your
decision.
Also is the 730k a lump sum deposit or
is it periodic payment over a period of
time.
Is your marital home in bend valued at
$400k  or is the equity values at
$400k? What is the market value of

 Message                         



Thank you hon *11:21 AM*

Ali, it's so very grand! I bet you never want to come home seeing and living in that beautiful place! Have a good night my love! *11:28 AM* ✓✓

Lol *11:31 AM*

October 10

Is your meeting your tomorrow morning if so call me when you have time is just about 12 am here I will be up for another hour.   Otherwise call me your tonight which will be Monday night of your and my Tuesday morning. Call me around your 11pm your time tonight *1:10 PM*

I am busy in operating room so will call you tonite if I don't fall asleep. I'll send you an email with everything of concern and you can respond one by one. *1:16 PM* ✓✓

Love send me the pictures of all the deeds you had copied email them one at a time so I can receive them a don

‹ Search    ‹    ›

**From:** Ali Zamani <ali0719@icloud.com>

**Date:** October 11, 2016 at 1:09:41 AM PDT

**To:** Angela Shergill <ashergil@hotmail.com>

**Subject: Your last telegram.**

I answer them one by one and you follow:

Hi love, i know you are asleep... just letting you know that everything I sent to you via email bounced back. I will try to stay awake but maybe will fall asleep before it's time to call you. I have been up since 4:30 am and worked all day. If I wake up in middle of night, I will try calling ok?
Few other things on my mind:
1. He has claimed two kids on tax returns for many years. I should claim all 4 now yes?

You should have claimed all 4 for past 7 years.  He filing a tax return on the 2 kids is the confirmation that the law needs to allow you for the past seven years child

allow you for the past seven years child support since he never supported the kids and this is also a tax fraud just added to his problem and good for you. Why do you give pieces at a time. If you want my help don't be controlling the event. Him filing the tax returned confirms his responsibility while he did not provide. You have a lots of amenities. Just have Ben in control and not dramatic and not personal. To the pint of law only.

How many years back he claimed the kids. He has to pay the back child support for the 7 years or at least to the year he claimed the kids

2. His retirement money? Should I bring up or leave it? If I bring up, they might force me to disclose my account and I do not want them to know anything about what I did with it. If they find out I put it in your account, I may get in trouble for hiding it and not paying the early withdrawal penalties no?

<Search                    ‹  ›

penalties no?

Yes you should cloak that as part of his martial assets.  Remember these
He forged your signature and stoked the marital assets
He claimed the kids without paying
He is in a lots of federal and state violation and you MuST stick to his violation and demand for 7 years child support and all properties in lite of you not filing the police file and not filing a text and forgery charges.
No he doesn't not have the right to know what you did with your own investment.
 You donated it officially to a nonprofit.
 There no law saying you can't but he has not so still owns the investment therefore you are entitled to half of the investment as part of martial assets.  This we're I helped you big.

3. His investments? Go for half yes? Then what about my house that I own? He

 

Torres Decl. ex.12
Page 5 of 11

3. His investments? Go for half yes? Then what about my house that I own? He technically can't go after it since move out date was prior to purchasing my home yes?

Yes you should demand for half o all his investment regardless of when you moved out of the marriage.  You will owe me a lot (kidding )

And no your purchase was after your official separation.  These are laws that I states not personal opinion. Just remember that.  Yes there is a law stating any purchases after the separation will not be part of marital assets of parties declare the delegation and live separately.

No he doesn't not have the right to know what you did with your own investment.  You donated it officially to a nonprofit.  There no law saying you can't but he has not so still owns the investment therefore you are entitled to half of the investment as part of martial assets.  This we're I helped you big.

remember that. Yes there is a law stating any purchases after the separation will not be part of marital assets of parties declare the delegation and live separately.
No he doesn't not have the right to know what you did with your own investment. You donated it officially to a nonprofit. There no law saying you can't but he has not so still owns the investment therefore you are entitled to half of the investment as part of martial assets. This we're I helped you big.
4. Where is the law that protects things when there was never any legal separation or legal divorce? This is a burning question that has been on my mind.

The legal separation is when two parties separate from
Marriage. Does not need the divorce for being legal.


Sent from Ali's iPhone




‹          **Ali**          ⓘ

> the petition tomorrow to give me your thoughts.

Ok donit say anything like you just said. " 8 said no till all terms agreed." It doesnit work like that.  Next time you say:  I like to take a day or two and think about it till we talk. Get it.  I don't to see you act unintelligently. This is very technical and you must learn that it's not your work and it's a deal must be made.  So back off let me look at it.  Nice after two day you tell me that.  If you want me help you you need to let me know when it happens.  Not when you think it's ok to let me know get it

I am taking a risk to help you so don't be a captain of the ship I mean this or I will not.  I have a lot to lose and for being in lived I am trying to help you but keep a clean distance

      iMessage    


‹               **Ali**               ⓘ

> I understand

Hope so

That was not good even with your attorney. I hope Yiu understand the magnitude of this even it's not going to store trying to buy something. .

You tell me after couple day and after you told him I don't want it. Why do you tell me them

So you understand that he can make accusation against me that I caused all these and get me involved. Do you know what my risks are trying to help you. Beyond your cbomperhesen. I really mean it. I want to help you but donit act crazy or nonsense. This is very delicate

I am really upset for your action. Completely disregard everything. Only thinking like it's all about you. Joke. I don't

      iMessage    



‹   **Ali**   ⓘ

it's all about you.  Joke. I don't want to talk I am very upset at you really ??

> It was a few little things like no attorney fees paid because I work and can support myself, decreased child support, no alimony and division of houses in mediation, parenting plan to be discussed later as opposed to now and division of property later on.

I don't care do you get it.  Ok I will leave it up to you and don't want to know anything about it. Who say what is important or not. You ? Do you have any experience in this ? Thank you

You either communicate everything or don't ask me to help you I mean this very straight.  I don't need any headache from any indian or someone is selfish

     iMessage

things were more clear Ali. Don't be upset over this. I do not see the magnitude of this because I expected him to disagree with some things. Nothing was done at all. I simply told Brian that I want attorney fees paid, child support, health insurance for kids paid and mine and my moms IRA. That is all. Your name was never ever and will never be brought up. I would never ever do that. Brian thinks this is my fight and my fight alone.

I don't care you don't tell him anything unless you talk to me first and let me think about it to make a right demand. Don't go crazy of what I said you are entitled to its nit that simple and you won't if you act and behave like this. You know none of my business you do as you wish. I don't want to hear about it again

You act and behave very

   iMessage