UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


| | |
|---|---|
| ANGELA TORRES, an individual, | Case No. 3:17-cv-01270-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| ALIREZA ZAMANIZADEH, a/k/a ALI ZAMANI, an individual; and ADULT CARE SEARCH, a foreign non-profit corporation, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff, Angela Torres ("Torres"), filed this action against defendants Alireza Zamanizadeh ("Zamanizadeh") and Adult Care Search ("ACS") (collectively "Defendants") asserting claims for fraud and unjust enrichment. Currently before the court is Torres's motion to compel Zamanizadeh to produce documents and answer interrogatories (the "Motion").

Zamanizadeh opposes the Motion asserting his Fifth Amendment privilege against self-incrimination.

The court finds Zamanizadeh's provision of documents to the government in connection with its criminal investigation did not constitute a waiver of his Fifth Amendment privilege in this separate civil proceeding. Similarly, the information Zamanizadeh provided in the declarations and oral argument in this proceeding was not inherently incriminating and did not waive the privilege. However, Zamanizadeh's blanket invocation of the privilege is improper because it must asserted on a question-by-question, or document-by-document, basis. Finally, Zamanizadeh is unable to assert a Fifth Amendment privilege with regard to ACS records in his possession. Accordingly, the Motion is granted in part and deferred in part.

*Background*

In May 2016, Torres and Zamanizadeh became involved in a romantic relationship. (Compl., ECF No. 1-1,[1] ¶ 6.) At that time, Torres had been separated from her husband for seven years and was contemplating initiating divorce proceedings. (Compl. ¶ 7.) Zamanizadeh encouraged Torres to file for divorce and suggested she protect her personal assets by transferring them to ACS, a non-profit corporation owned primarily by Zamanizadeh.[2] (Compl. ¶¶ 3-5, 7, 8.) Zamanizadeh assured Torres her assets would not be used by Defendants and would be returned to her upon the finalization of her divorce. (Compl. ¶¶ 5, 8.) Based on Zamanizadeh's direction

---

[1] Torres originally filed her lawsuit in the Superior Court for the State of Washington, County of Clark. (Notice of Removal, ECF No. 1.) The parties stipulated to the removal of this action to this court and attached the original complaint as exhibit l to the Notice of Removal.

[2] Torres alleges, and Zamanizadeh admits, he is the principal shareholder, president, and chief executive officer of ACS.

and assurances, Torres transferred substantial assets to ACS including cash, in the amount of approximately $300,000, and her residence, valued at $573,000. (Compl. ¶¶ 9, 26.) Torres subsequently authorized Defendants to use some of the transferred funds and issued a cashier's check to Zamanizadeh in an additional amount of $13,000. (Compl. ¶ 10.) Torres's divorce was finalized in December 2016. (Compl. ¶ 16.) Despite repeated requests, Zamanizadeh has refused to reconvey the residence or return the funds to Torres. (Compl. ¶ 16.)

Torres filed a lawsuit against Zamanizadeh on February 20, 2017, seeking recovery of the amounts transferred to Defendants. (Stipulated Notice of Removal, ECF No. 1 ("Notice"), at 2.) Defendants' legal counsel negotiated the removal of the lawsuit to this court, filed an answer and counterclaims, and appeared at a Rule 16 conference and hearing on a temporary restraining order on behalf of Defendants before obtaining court approval to withdraw as counsel on January 31, 2018. (Minutes of Proceedings, ECF No. 20.) With the exception of counsel appointed by the court to assist Defendants in the negotiation of a settlement between January 24, 2019 and March 18, 2019, Zamanizadeh has represented himself, and attempted to represent ACS, in this litigation.

On May 23, 2019, Defendants filed a motion to stay this case in light of an ongoing investigation by the United States Attorney's Office, based on allegations of Defendants criminal interactions with Torres ("Stay Motion"). (Defs.' Mot. to Stay the Civil Case and Subpeonas, ECF No. 62 ("Mot. to Stay"), at 1, 3.) Torres opposed the Stay Motion, arguing no criminal complaints had been filed against Zamanizadeh, Zamanizadeh waived his Fifth Amendment privilege by participating in this action and offering numerous statements regarding the facts at issue, and any delay would be prejudicial to Torres.

At a hearing held on May 31, 2019, the court granted the Stay Motion, which included a stay of all discovery, pending a status conference set for July 10, 2019. (Mins. of Proceeding, ECF No. 71.) The order generated at the July 10, 2019 status conference required:

> (1) Defendant to provide to plaintiff's counsel copies of transcript(s) of any recorded conversations between he and plaintiff, as well as a copy of the letter to the government, which is allegedly authored by plaintiff. (2) Defendant to produce any documents pertaining to any transactions contained in the complaint and any communications with plaintiff. (3) Defendant will not respond to any requests for admissions until further order of the court. (4) Defendant is to answer the Interrogatories propounded by plaintiff's counsel unless advised otherwise by Tom Price. (5) Plaintiff to provide to defendant previously requested discovery that was propounded when defendant was represented by counsel. (6) All discovery mentioned above to be provided on or before 8/9/19. (7) All other discovery remains stayed including plaintiff's subpoenas.

(Mins. of Proceeding, ECF No. 72.)

The court subsequently received two letters from Thomas E. Price ("Price"), Zamanizadeh's court-appointed criminal defense counsel. In a letter dated July 8, 2019, Price informed Zamanizadeh he provided Assistant United States Attorney Donna Maddux "additional evidence which the government is now reviewing" specifically "the 3 audio files you provided." (Glinka Decl., ECF No. 76, Ex. 4.) The "government" also planned "to conduct tests on the letter." (Glinka Decl. Ex. 4.) In a second letter dated July 31, 2019, Price informed the court he was "advising Mr. Zamanizadeh to invoke his rights against self-incrimination under the Fifth Amendment in response to the [July 10, 2019 court order]." (Glinka Decl. Ex. 5 at 1.) Specifically, Price advised Zamanizadeh not to produce copies of any transcripts of recorded conversations between Torres and Zamanizadeh or any documents related thereto, a copy of a letter to the government authored by plaintiff, or any documents pertaining to the transactions alleged in the complaint filed in this action. (Glinka Decl. Ex. 5 at 1.)

At a status conference held August 14, 2019, the court granted Torres's request to file a brief addressing Zamanizadeh's Fifth Amendment arguments. In response, Torres filed the Motion seeking answers to interrogatories and production of documents as ordered by the court in the July 10, 2019 order.

*Legal Standard*

Rule 37 of the Federal Rules of Civil Procedure provides that a party seeking discovery may move the court for an order "compelling an answer, designation, production, or inspection" if a party fails to answer a properly submitted interrogatory or fails to produce requested documents. FED. R. CIV. P. 37(a)(3)(B) (2019). The party seeking to compel discovery is burdened with demonstrating the information he or she seeks is relevant, but "[t]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975); *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990)). The court has broad discretion to determine the relevancy of the information sought, and the requested information need not be admissible to be discoverable. *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).

*Discussion*

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." U.S. CONST. amend V. "This provision of the Amendment must be accorded liberal construction in favor of the right it was intended to secure." *Hoffman v. United States*, 341 U.S. 479, 486 (1951).

While the express language of the provision seemingly limits the right against self-incrimination to the criminal context, the Fifth Amendment's protections have been deemed to apply to civil proceedings. *Lefkowitz v. Turley,* 414 U.S. 70, 77 (1973). Thus, the Fifth Amendment's protections against self-incrimination can be asserted in any proceeding, be it civil, criminal, administrative, judicial, investigative, or adjudicatory. *Kastigar v. United States,* 406 U.S. 441, 444 (1972). However, in the civil context, the invocation of the privilege is limited to those circumstances in which the person invoking the privilege reasonably believes that his disclosures could be used in a criminal prosecution or could lead to other evidence that could be used in that manner. *United States v. Bodwell,* 66 F.3d 1000, 1001 (9th Cir.1995). Therefore, the "privilege against self-incrimination does not depend upon the *likelihood,* but upon the *possibility* of prosecution" and also covers those circumstances where the disclosures would not be directly incriminating but could provide an indirect link to incriminating evidence. *United Liquor Co. v. Gard,* 705 F.2d 1499, 1501 (9th Cir.1983).

There is no dispute Zamanizadeh is the subject of a criminal investigation and Torres does not argue Zamanizadeh does not have a valid claim to a Fifth Amendment privilege. The only question is whether Zamanizadeh, by his prior disclosures in this proceeding and in connection with the criminal investigation, waived his right to assert the privilege in this proceeding. Like other privileges in a civil setting, the Fifth Amendment privilege can be waived. However, "Fifth Amendment waivers 'should be inferred only in the most compelling circumstances.'" *Conant v. McCaffrey,* No. C 97-0139 FMS, 1998 WL 164946, at *6 (N.D. Cal. Mar. 16, 1998) (quoting *Klein v. Harris,* 667 F.2d 278, 288 (2d Cir. 1981)). As with other fundamental constitutional rights,

courts "must indulge every reasonable presumption against waiver." *Emspak v. United States*, 349 U.S. 190, 198 (1955).

Torres argues Zamanizadeh waived his right to rely on the Fifth Amendment privilege when he provided documents to the government, presented sworn testimony in declarations filed in this case, and made factual representations during oral argument in open court, all pertaining to the allegations here and being investigated by the government in the criminal proceeding. Additionally, Torres contends Zamanizadeh may not assert a Fifth Amendment privilege on behalf of ACS.

I.  Provision of Documents to Government

Zamanizadeh's defense counsel provided documents to the United States Attorney's Office with regard to a criminal investigation of Defendants. To the extent this production constituted a waiver of Zamanizadeh's Fifth Amendment rights, such waiver is limited to the criminal investigation and does not prevent Zamanizadeh from asserting such rights in this civil action. "It is well settled that a waiver of the Fifth Amendment privilege is limited to the particular proceeding in which the waiver occurs." *United States v. Licavoli*, 604 F.2d 613, 623 (1979) (voluntary testimony before a grand jury did not waive the privilege at trial); *see also Mitchell v. United States*, 526 U.S. 314, 321 (1999) ("[i]t is will established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details."). Zamanizadeh's provision of documents to the government in the criminal investigation is irrelevant to Zamanizadeh's ability to assert his Fifth Amendment rights in this action and does not constitute a waiver of such rights.

II. Declarations and Oral Argument in this Proceeding

While appearing *pro se* in this civil action, Zamanizadeh filed two declarations and participated in oral argument. Torres appears to argue this conduct constitutes a waiver of Zamanizadeh's Fifth Amendment privilege with regard to all discovery. A party may waive the Fifth Amendment privilege through the disclosure of incriminating facts. *Rogers v. United States,* 340 U.S. 367, 373-74 (1951); *see also McCarthy v. Arndstein,* 262 U.S. 355, 357-59 (1923) (disclosure of facts that are not incriminating do not waive Fifth Amendment privilege as to matters that might incriminate witness). Once such facts are admitted, a party cannot properly claim privilege over the details surrounding those incriminating facts. *Id.* at 373. However, the party still retains a privilege over any additional facts that would further incriminate them. *Id.* at 374; *see also In Re Master Key*, 507 F.2d 292, 294 (9th Cir. 1974) (quoting *Shendal v. United States,* 312 F.2d 564, 566 (9th Cir. 1963) ("an ordinary witness may 'pick the point beyond which he will not go,' and refuse to answer any questions about a matter already discussed, even if the facts already revealed are incriminating, as long as the answers sought may tend to further incriminate him.").

Torres does not argue, and the court is not convinced, the information offered by Zamanizadeh in his declarations and oral arguments is incriminating. Zamanizadeh offers his version of the facts, admitting he and Torres had a romantic relationship, Torres made donations to ACS without Zamanizadeh's knowledge, volunteered to loan money to Defendants that would be paid back with assets transferred from Iran, and authorized Zamanizadeh to utilize a power of attorney Torres provided him. Torres describes this information as "one-sided statements," Zamanizadeh's "own retelling of the relevant events," and a "biased narrative of the events and

facts at issue," impliedly conceding the information provided by Zamanizadeh places Zamanizadeh in a positive light and is not incriminating. (Pl.'s Mot. to Compel, ECF No. 75, at 8.) The court does not find the information voluntarily offered by Zamanizadeh is incriminating. Accordingly, Zamanizadeh did not waive his Fifth Amendment privilege by offering his version of the facts in the declarations or at oral argument.

However, Zamanizadeh's broad invocation of his Fifth Amendment privilege to the universe of the discovery sought in the Motion is improper. "The only way the privilege can be asserted is on a question-by-question basis, and thus as to each question asked, the party has to decide whether or not to raise his Fifth Amendment right." *Doe v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000). To preserve his right to assert the Fifth Amendment privilege, Zamanizadeh must invoke the privilege on a question-by-question, or document-by-document, basis. Torres may then dispute each assertion of the privilege, allowing this court to consider the applicability of the privilege in the same fashion. *Rogers*, 340 U.S. at 374 ("As to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of further crimination.").

III.  Corporate Records

"The constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals." *United States v. White*, 322 U.S. 694, 698 (1944). "Moreover, the papers and effects which the privilege protects must be the private property of the person claiming the privilege, or at least in his possession in a purely personal capacity." *Id*. at 699. Accordingly, the Fifth Amendment privilege may not be asserted by or on behalf of a corporation, partnership, or other entity in response to a request for corporate records. *Id.*

Custodians of corporate records, such as directors, officers, or shareholders, hold the records as representatives of the corporation and may be compelled to produce them "even though production of the papers might tend to incriminate them personally." *Id.* Zamanizadeh is unable to assert a Fifth Amendment privilege on behalf of ACS and must produce all corporate records in his possession.

*Conclusion*

Torres's motion to compel (ECF No. 75) is GRANTED with regard to corporate documents of ACS in Zamanizadeh's possession as shareholder, president, or chief executive officer of ACS, and DEFERRED with regard to all other answers or documents to allow Zamanizadeh to assert, Torres to contest, and the court to consider, his Fifth Amendment privilege on a question-by-question, or document-by-document, basis.

DATED this 26th day of November, 2019.

/s /John V. Acosta  
JOHN V. ACOSTA  
United States Magistrate Judge